560 A.2d 851

**In re Appeal of HARBUCKS, INC., from the Decision of the Board of Supervisors of Nockamixon Township.**

**HARBUCKS, INC., Appellant,**

v.

**BOARD OF SUPERVISORS OF NOCKAMIXON CENTER HILL, Appellee.**

Commonwealth Court of Pennsylvania.

Argued Dec. 14, 1988.

Decided June 15, 1989.

Reargument Denied Aug. 24, 1989.

592

Elaine M. Ross, King of Prussia, David I. Davis and Marc B. Cohen, Law Offices of Jonathan DeYoung, for appellant.

Terry W. Clemons, Clemons and Klimpl, for Nockamixon Tp. Bd. of Supervisors.

Donald L. Toner, Doylestown, for appellee.

Before CRUMLISH, Jr., President Judge, and CRAIG, BARRY, COLINS, PALLADINO, McGINLEY and SMITH, JJ.

SMITH, Judge.

█ Harbucks, Inc. (Harbucks) appeals from an order and decision of the Bucks County Court of Common Pleas affirming the decision of the Nockamixon Township Board of Supervisors (Board) which denied Harbucks's application for a curative amendment to the Nockamixon Township Zoning Ordinance (Ordinance) and held that the Ordinance was not exclusionary as to quarrying operations. The issues presented are whether the Ordinance permits quarrying operations within Nockamixon Township (Township) and whether Harbucks' application for curative amendment was properly denied. The trial court is affirmed.[1]

Harbucks, a Maryland corporation, owns approximately 111 acres of land situated along the east side of Route 611, in Bucks County, Pennsylvania. The property is located in an area zoned industrial pursuant to the Ordinance as enacted in 1968. Section 35 of the Ordinance permits the following uses in the industrial district: production, manufacturing, processing, cleaning, testing, storage and distri-

---

1. A decision of the trial court may be affirmed on appeal when the result is correct although the ground relied upon by the trial court for its decision is incorrect. *Kraiser v. Horsham Township,* 72 Pa. Commonwealth Ct. 16, 455 A.2d 782 (1983). This Court disagrees with the trial court's holding that the Ordinance was non-exclusionary but agrees that the application was properly denied for reasons discussed herein.

bution of material, goods, foodstuffs and product. On September 26, 1984, Harbucks filed its application for a curative amendment challenging the substantive validity of the Ordinance on the ground that it excludes a legitimate use within the Township, namely, quarrying operations.

The particular site in question was the subject of much litigation in the early 1970's involving other corporate entities. At that time, several corporations operated a metals reclamation plant at the site which contained in excess of three million gallons of highly acidic liquid containing high concentrations of heavy metals. The metals reclamation activity involved the dumping of various metals into highly acidic lagoons which were comprised of sulfuric acid. The lagoons were not lined and many of the metals seeped into the soil. On April 16, 1970, the trial court found the level of pollution to be so high that it ordered representatives of the Commonwealth of Pennsylvania to enter the premises to remove and dispose of all the polluting substances so as to prevent further harm. Findings of Fact No. 16. The clean-up effort was not entirely successful and to date, the soil still contains high concentrations of heavy metals.

After conducting thirteen hearings, the Board denied Harbucks' application for a curative amendment. Harbucks thereafter appealed to the trial court which concluded that the Board did not err in denying the curative amendment application and upheld the constitutionality of the present Ordinance and further found the Harbucks' site unsuitable for quarrying purposes. Hence, this appeal.[2]

In support of its position that the Ordinance excludes quarrying, Harbucks contends that the Board erred in concluding that production encompasses quarrying and that the trial court erred in holding that the quarrying activity would fall into the category of either "production" or "processing." Harbucks contends that neither production nor

2. This Court's scope of review where the trial court has taken no additional evidence or testimony is limited to determining whether the Board abused its discretion, committed an error of law, or whether findings are supported by substantial evidence. *Sweigart Appeal,* 117 Pa. Commonwealth Ct. 84, 544 A.2d 74 (1988).

processing adequately describes or defines a quarrying operation and points out that zoning ordinances which impose restrictions on the free use of property and are in derogation of the common law must be strictly construed; that plain words of a zoning ordinance are to be given their common and ordinary meaning; and that comprehensive plans only provide guidance to a zoning authority in enacting a zoning ordinance. Harbucks also challenges the Board's reliance on the testimony of James R. Leister, a consultant for the Township's comprehensive plan, and Walter Evans, zoning supervisor.

The Board based its decision on the fact that Harbucks failed to demonstrate that the Ordinance on its face completely bans a particular use because, absent express limitations, permissive words in a zoning ordinance are to be given their broadest meaning and since quarrying is not a use which is specifically excluded, it is a permitted use in the Township. The Board further determined that Harbucks failed to adduce any evidence demonstrating that the Ordinance acts to exclude quarrying. The facts relied upon by the Board were that there was an active quarry operating in the Township, Bucks County Crushed Stone, and that James R. Leister and Walter Evans both testified that although quarrying was not specifically listed, it was however a permitted use. The trial court went further and held that quarrying would fall into the category of either "production" or "processing."[3]

A municipal or township ordinance may not exclude a legitimate use from a municipality or township unless there is some legitimate reason for excluding such use based on the effects upon the public's health, safety, welfare and morals; further, a quarry operation does not in and of itself necessarily run afoul of the public's health, safety and welfare. *Exton Quarries, Inc. v. Zoning Board of Adjustment*, 425 Pa. 43, 228 A.2d 169 (1967). Quarrying

3. The trial court agreed that quarrying would not qualify as a "manufacturing activity" as the term implies using two or more separate items to create a new, different item. Trial Court Opinion, p. 7.

is a legitimate and non-objectionable use of the land. *Lower Allen Citizens Action Group, Inc. v. Lower Allen Township Zoning Hearing Board*, 93 Pa. Commonwealth Ct. 96, 500 A.2d 1253 (1985). Moreover, zoning ordinances are to be strictly construed. *Constantino v. Borough of Forest Hills*, 88 Pa. Commonwealth Ct. 306, 489 A.2d 968 (1985).

■ Township, in support of its position, relies upon *Tohickon Valley Transfer, Inc. v. Tinicum Township Zoning Hearing Board*, 97 Pa. Commonwealth Ct. 244, 509 A.2d 896 (1986) where this Court held that the terms "discarded materials" and "refuse" are synonymous and thus a "junkyard" used for storage was a permitted use within the township. Accordingly, Township claims that quarrying operations are permitted because "production" is synonymous with "quarrying". However, if the terms "production" and "processing" in this instance are strictly construed, it is clear that quarrying does not fit into either definition. "Production" refers to the process or act of producing something through physical labor, intellectual effort or through natural processes. *Minnesota Power & Light Co. v. Personal Property Tax, Taxing District, City of Fraser, School District No. 695*, 289 Minn. 64, 182 N.W.2d 685 (1970); Black's Law Dictionary 1089 (5th ed. 1979). Quarrying refers to extraction of materials and removal of fragments of rocks by impact from an open excavation. *Struyk v. Samuel Braen's Sons*, 17 N.J.Super. 1, 85 A.2d 279 (1951); *affirmed* 9 N.J. 294, 88 A.2d 201 (1952) Webster's Third New International Dictionary 1860 (1971). "Processing" refers to either a chemical or mechanical action or a combination of both. *Gulf Oil Corp. v. City of Philadelphia*, 357 Pa. 101, 53 A.2d 250 (1947). In this instance, the rock remains the same; it is not refined nor is it suddenly converted into a useful end product. The Board thus did not strictly construe the Ordinance as it was required to do.

■ Township also notes that there is another quarry operating in the industrial district although this quarry is

permitted under village commercial district use and not industrial. Only a portion of this other quarry is located in the industrial district, whereas the rest of the quarry is located in an area zoned village commercial. This Court has held however that the existence of another quarry in the community does not, without more, justify total exclusion of quarrying operations as contended by Harbucks. *See Township of Paradise v. Mt. Airy Lodge, Inc.*, 68 Pa. Commonwealth Ct. 548, 449 A.2d 849 (1982). This Court also agrees with Harbucks that there is no merit to a "fair share" argument on behalf of the Township because in cases involving total exclusion, a "fair share" argument is inapplicable. *Fernley v. Board of Supervisors of Schuylkill Township*, 509 Pa. 413, 502 A.2d 585 (1985). A "fair share" analysis requires the reviewing court to determine whether zoning ordinances reflect a balanced and weighted consideration of the many factors which bear upon local and regional needs and development. *Id.*

Walter Evans, a member of the American Institute of County Planners, testified that a survey conducted by him of surrounding municipalities in Bucks and Montgomery Counties showed that these areas treated quarrying operations in the same manner as they are treated in the Township. The manner in which quarrying operations are treated in neighboring communities however does not justify a ban. *See Borough Council of Churchill Borough v. Pagal, Inc.*, 74 Pa. Commonwealth Ct. 601, 460 A.2d 1214 (1983). Moreover, Mr. Evans testified that he was not familiar with quarry operations nor does he know how Harbucks plans to operate its proposed quarry. N.T., pp. 25–26, 44, September 12, 1985 Hearing. James Leister, who assisted in developing the comprehensive plan for the Ordinance, testified that although quarrying was listed as a permitted use in the comprehensive plan, it was not included in the Ordinance as finally enacted. A comprehensive plan is recommendatory only as it is only a guide to overall land utilization and to meeting the needs and desires of the community. A zoning ordinance actually regulates the land

use as recommended by the comprehensive plan. *Borough Council of Churchill Borough; Morelli v. Borough of St. Mary's,* 1 Pa. Commonwealth Ct. 612, 275 A.2d 889 (1971). This Court is mindful of the fact that the Board in its role as factfinder determines witness credibility. *See Lower Allen Citizens Action Group, Inc.* The Board, in this instance, however, erred in relying upon these witnesses' testimony in reaching its legal conclusion, specifically, that the ordinance encompasses quarrying.[4] This Court therefore concludes that the trial court erred in determining that the ordinance is non-exclusionary and hereby holds that the ordinance is in fact exclusionary with respect to quarrying operations.

However, it is well-established in Pennsylvania that when it is shown that a zoning ordinance is exclusionary, then the challenging landowner must be permitted to develop the land provided that the proposed plans of the landowner are not injurious to public health, safety, welfare and morals. *Fernley,* 509 Pa. 422–423, 502 A.2d 589–590. Harbucks proposed to quarry in an area at the confluence of two streams. The facts here indicate that quarrying at the proposed site would be harmful to the public's health, safety and welfare. Evidence adduced at hearings before the Board established that the level of pollution at the Harbucks' site was still very high. During the clean-up efforts following the April 16, 1970 court order, approximately 3,000–4,000 gallons of contaminants spilled into the soil. The aquifer at the Harbucks' site is the sole source from which surrounding property owners obtain their water supply. The Harbucks' site is hydro-geologically connected to a large area within the Township and could possibly affect both the water supply as well as water quality. Among the metals found at the reclamation site is hexvalent chrome which is known to be toxic to both humans and wildlife. Even after ten years, the soil does not support any vegetative growth and remains unstabilized and subject

---

4. Subsequent to Harbucks' application for a curative amendment, Township amended the Ordinance by adding a Q-quarry district. The amendment, however, is not at issue here.

to accelerated erosion. In 1984, after additional testing by the United States Environmental Protection Agency, it was determined that the site still exhibited heavy concentrations of lead, copper, mercury, chromium, arsenic and nickel at levels far above the minimum standard set by the Environmental Protection Agency. The Harbucks' site has been added to the Environmental Protection Agency's National Priorities List; however, no funds are currently available for a new clean-up of the site. Trial Court Opinion, pp. 9–15; Board Findings of Fact Nos. 101–132.

Accordingly, although Harbucks has demonstrated that the Ordinance is exclusionary, the Board acted properly in denying the application for a curative amendment as the facts indicate that quarrying at this site would be injurious to the public's health, safety, welfare and morals. The trial court is affirmed.

CRUMLISH, Jr., President Judge, and BARRY and PALLADINO, JJ., concur in the result only.

ORDER

AND NOW, this 15th day of June, 1989, the order of the Bucks County Court of Common Pleas is affirmed.