605 A.2d 321

**H.R. MILLER COMPANY, INC., Appellant,**

**v.**

**BOARD OF SUPERVISORS OF LANCASTER TOWNSHIP, Appellee.**

Supreme Court of Pennsylvania.

Argued Dec. 3, 1990.

Decided March 27, 1992.

Terry R. Bossert, Harrisburg, for appellant.

Frank J. Vargish, III, Elizabeth A. Hambrick–Stowe, Lancaster, for appellee Bd. of Sup'rs of Lancaster Tp.

Robert M. Frankhouser, Jr., Lancaster, for appellee School Dist. of Lancaster.

Gregory Paulson, Lancaster, for Gable Park Assoc.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION OF THE COURT

ZAPPALA, Justice.

H.R. Miller Company, Inc., challenged the Lancaster Township zoning ordinance, claiming that it excluded a legitimate commercial use, i.e., quarrying. In conjunction

with its challenge, the Company submitted a proposed curative amendment, suggesting that the deficiency be corrected by amending the zoning map to include a Mineral Recovery District encompassing land owned by the Company. The township board of supervisors dismissed the Company's challenge and denied its request for curative amendment, but on appeal, the court of common pleas accepted the Company's argument that the ordinance operated as a *de facto* exclusion of quarries. Notwithstanding this finding, the court did not grant the Company "site-specific relief" as to any aspect of its proposed use. The court limited its remedy to a declaration that certain setback requirements contained in the ordinance, which had the effect of limiting the area where quarrying was a permitted use, be stricken. Commonwealth Court affirmed. We granted allowance of appeal to review the Company's claim that the court, having found the ordinance to be exclusionary, was required to grant site-specific relief or, at the least, to order the plan approved in some part and refer other elements of the Company's plan to the governing body for further proceedings.

H.R. Miller Company, Inc., operates a limestone quarry on twenty-nine acres of land in the southwest portion of Lancaster Township. The quarry has existed since approximately 1890. When the township enacted its first zoning ordinance in 1940, the area where the quarry is located was zoned as "agricultural". The following year, the Company's predecessor in title was successful in petitioning the Township to rezone the land "industrial". The Company acquired the quarry sometime before 1960. In that year, the Township revised its zoning ordinance and the area was rezoned "residential". It remained so classified when the ordinance was again revised in 1972. The Company's operation thus continues as a pre-existing non-conforming use. The Company has also purchased several tracts of adjacent property in the residential district, currently owning a total of one hundred seventeen acres.

When the Company filed its challenge to the zoning ordinance in 1986, the ordinance permitted quarry operations as a special exception in the Township's "industrial" districts. The challenge, therefore, was not a claim of *de jure* exclusion of a legitimate use. Rather, the Company argued that quarrying had been excluded *de facto* because several factors—the limited size of the industrial districts, the requirement that any quarry pit be set back 500 feet from property lines and street rights-of-way, and the existing land uses—combined to make such operations physically impossible or economically unfeasible.

In hearings before the Township's Board of Supervisors, the Company presented evidence of the dimensions of the largest quarry pit that could be located in the largest industrial district. It also presented economic evidence of the cost of acquiring the various parcels of land in the district and other production costs, along with testimony of company officials that given these costs a quarry of such size would not yield enough stone to make it profitable. The Township presented different estimates of the sizes and configurations of quarry pits that could be located in the industrial zone. It also challenged the accuracy and the significance of the Company's economic evidence in cross-examining the Company's witnesses, but did not introduce its own evidence on these points.

The Supervisors rejected the Company's economic evidence as unsubstantiated and self-serving. The Supervisors also interpreted the ordinance's buffer zone requirements such that the land dedicated to the 500 foot setback need not be within the industrial district, thus making a substantially greater area available within the industrial zone to place a quarry pit. According to this interpretation, the Supervisors determined that sufficient stone reserves would be available to surpass the "break-even point" even according to the Company's estimates, and thus that operation of a quarry was both geographically and financially feasible.

The Court of Common Pleas held that the Supervisors' rejection of the Company's economic evidence constituted a

manifest abuse of discretion and found that the Company had partially carried its burden of showing *de facto* exclusion. The court also found that the difficulty of acquiring the parcels that were already in use for residential and industrial purposes at the time the area was designated an industrial district, would present an obstacle to any attempt to locate a quarry there. The combination of these factors led the court "to hold that [the Supervisors] lacked substantial evidence to conclude that quarries are not excluded." Opinion at 10.

The court further determined that the Supervisors committed an error of law in ruling that land outside the industrial zone could be committed to use as a buffer area for a quarry located in the industrial zone. Finding that a five hundred foot setback requirement was, in the language of the statute, "not reasonably related to the municipality's authority to determine its physical growth pattern, protect the Commonwealth's public natural resources, coordinate development with the provision of public services, or protect the character of the community," the court held "that Section 1302(2)(c) [the setback provision] acts as an unconstitutional *de facto* exclusion of quarries from the Township." Opinion at 12.

The next part of the court's opinion was devoted to a determination of whether to grant the site-specific relief requested by the Company. Citing *Fernley v. Board of Supervisors of Schuylkill Township*, 509 Pa. 413, 425, 502 A.2d 585, 591 (1985), the court stated that site-specific relief was not automatic, but could be rejected if the Supervisors could show that the plan was incompatible with the proposed site. The court examined the five factors then found in Section 1011(2) of the Municipalities Planning Code.[1]

1. Section 1011(2) provided that:

   If the court in accordance with the standards provided in subsection (1), finds that an ordinance or map or a decision or order thereunder which has been brought up for review unlawfully prevents or restricts a development or use which has been described by the landowner through plans and other materials submitted to the governing body, agency or officer of the municipality whose action

Although it found "no evidence that the proposed quarry expansion would adversely affect the environment in any material way," the court concluded "that the comprehensive and progressive residential character of the southwestern portion of the Township outweighs any environmental considerations, especially in light of the fact that the Conestoga Limestone Formation underlies the industrially zoned districts as well." Opinion at 15. For this reason, the court held the Company's site unsuitable for quarry operations and denied site-specific relief. The court went on to state that "[a]s only the five hundred foot setback limitation has been brought to issue and addressed by this Court, it would be erroneous to declare the entire Ordinance invalid where a severability provision exists." [2] Accordingly, the court held that Section 1302(2)(c) was to be stricken from the ordi-

or failure to act is in question on the appeal, it may order the described development or use approved as to all elements or it may order it approved as to some elements and refer other elements to the governing body, agency or officer having jurisdiction thereof for further proceedings, including the adoption of alternative restrictions, in accordance with the court's opinion and order. In issuing its order, the court shall consider the following: (i) the locational suitability of the site for the uses proposed including the general location of the site with regard to major roads, sewer facilities, water supplies, schools and other public service facilities or the comprehensive plan and zoning ordinance of the municipality and the county if they exist; (ii) the impact of the proposal on regional housing needs, the transportation network, and the other public services and facilities; (iii) the suitability of the site for the intention of use proposed by the site's soils, slopes, woodland, wetlands, flood plains, aquifers, natural resources and other natural features; (iv) the impact of the proposed use on the site's soils, slopes, woodland, wetlands, flood plains, aquifers, natural resources and other natural features, the degree to which these are protected or destroyed, the tolerance of the resources to development and any adverse environmental impacts; and (v) the impact of the proposal on the preservation of agriculture and other land uses which are essential to the public health and welfare.

**2.** Justice Larsen describes this determination as "erroneous" and cites to Miller's original Challenge to Validity of Ordinance and Request for Adoption of Curative Amendment. See Dissenting Opinion at 326, fn. 1. When the matter came before the Court of Common Pleas, however, Miller apparently presented no argument to the court beyond the assertion that the setback requirement operated as a *de facto* exclusion. See Opinion at 489–490, fn. 2.

484

nance, leaving in its place the minimum setbacks required by state regulations.

The Company argues that the lower courts erred in interpreting Section 1011(2) and *Fernley* as permitting the total denial of site-specific relief. According to this argument, the court must "order the described development approved as to all elements or ... order it approved as to some elements and refer other elements ... for further proceedings," but may not entirely withhold approval of the development.

■ Historically, the rationale for allowing a landowner to proceed with a proposed development upon successfully challenging an ordinance as exclusionary has been that "[o]nce a zoning ordinance is found to be constitutionally defective, the judgment invalidates the entire ordinance," *Casey v. Zoning Hearing Board of Warwick Township*, 459 Pa. 219, 229, 328 A.2d 464, 468 (1974). In the absence of a valid zoning ordinance, a property owner is free to use his property as he wishes.

In *Casey*, we recognized that the legislature had attempted to avoid the potential for chaos that could follow the invalidation of a municipality's zoning ordinance, by authorizing the court to "stay the effect of its judgment for a limited time to give the local governing body an opportunity to modify or amend the ordinance in accordance with the opinion of the court." Act of July 31, 1968, P.L. 805, § 1009 (repealed). We held, however, that under this provision, the municipality could not be permitted to modify or amend its ordinance in such a way that the defect was cured but the landowner who had raised the challenge obtained no relief. We decided, in effect, that the judgment could not be "purely prospective", but had to apply at least to the party who had successfully litigated the matter of the invalidity of the ordinance. At the same time, we recognized that there might be "other sources of control" beside the invalidated zoning designation (e.g., subdivision ordinances, building codes) that could still be legitimately applied to the proposed use.

■ Where the cause of an ordinance's invalidity is a *de jure* exclusion of a legitimate use, as in *Casey*, application of these principles is a relatively straightforward task. Since the illegality lies in the total exclusion of a legitimate use, the sole remedy is to allow the use somewhere in the municipality, and equity dictates that this opportunity fall to the successful litigant/landowner.

■ Where the exclusion is *de facto*, however, the analysis is more complicated. The ordinance on its face permits the proposed use, but under such conditions that the use cannot in fact be accomplished. In such a case, it may be possible to cure the unlawful exclusion without invalidating the ordinance. By applying the rule of severability [3], the restrictive conditions may be eliminated without affecting the remainder of the ordinance. As a result, the use is allowed according to the explicit terms of the ordinance that remain.

It must be emphasized that the focus of the inquiry in all cases is the constitutionality of the ordinance, whether the ordinance is a proper exercise of the police power, and not whether the landowner "deserves" to be able to make a particular use of his property. If the ordinance can be "saved" from unconstitutionality by severance of an offending provision, if the ordinance as severed is constitutional, the landowner/litigant is not entitled to proceed with his

---

**3.** Article XXI of the Lancaster Township Zoning Ordinance provides that

If any article, section, sub-section, provision, limitation, restriction, sentence, clause, phrase, or word in the Zoning Ordinance is declared for any reason to be illegal, unconstitutional or invalid by any Court of competent jurisdiction, such decision shall not affect or impair the validity of the Zoning Ordinance as a whole, or any other article, section, sub-section, provision, regulation, limitation, restriction, sentence, clause, phrase, word or remaining portion of the Zoning Ordinance. The Board of Township Supervisors hereby declares that it would have adopted the Zoning Ordinance and each article, section, subsection, provision, regulation, limitation, restriction, sentence, clause, phrase and word thereof, irrespective of the fact that any one or more of the articles, sections, sub-sections, provisions, regulations, limitations, restrictions, sentences, clauses, phrases or words may be declared illegal, unconstitutional or invalid.

See also 1 Pa.C.S. § 1925.

proposal as a reward for having pursued the litigation. To the extent that his "success" in the litigation was limited, his relief is limited as well; he will have the opportunity to acquire and develop property in the zone where the use is permitted.

Unfortunately, the common pleas court's opinion in this case confused the matter by first addressing the statutory factors regarding site-specific relief and then applying the severability provision of the ordinance.[4] Because the purpose of the severability provision is to salvage, if possible, the remainder of the ordinance if any part of it is declared invalid, such analysis must be undertaken first. For if the ordinance minus the severed offending provision passes muster as a reasonable exercise of the police power, there is no cause to grant further relief, site-specific or otherwise; the ordinance is no longer *de facto* exclusionary.[5]

In the case at bar, after the 500–foot setback provision is severed, the ordinance on its face permits quarrying in the industrial zones and the only limitation on area derives from

4. The court cited to *Greenwood Township v. KEFO, Inc.,* 52 Pa. Commw. 367, 416 A.2d 583 (1980), in support of its decision to apply the severability provision rather than declare the entire ordinance invalid. In that case, the common pleas court invalidated a zoning ordinance after finding that certain distance requirements in the ordinance a de facto exclusion of landfill operations from the township. Commonwealth Court affirmed the determination that the distance requirements were invalid, but held that the court erred in declaring the entire ordinance invalid in light of the severability provision of the ordinance and 1 Pa.C.S. § 1925. It is recognized that *KEFO* was a declaratory judgment action where the landowners simply sought a declaration that the challenged restrictions were invalid, and not an appeal of a decision under the Municipalities Planning Code. Nevertheless, we find this distinction of no consequence. As the Commonwealth Court noted in *KEFO,* "[t]he possible severability of provisions of the ordinance is always germane. : . ." 52 Pa.Commw. at 374, 416 A.2d at 586.

5. Of course, if the defect asserted cannot be cured by severing provisions of the ordinance, the case stands in the same posture as one involving a *de jure* exclusion. The sole remedy is to allow the use somewhere, and under *Casey* and Section 1006–A(c) of the Municipalities Planning Code, added by the Act of Dec. 21, 1988, P.L. 1329, No. 170, § 101, effective Feb. 20, 1989, 53 P.S. § 11006–A, the successful litigant must receive that benefit in the form of at least partial approval of the proposal.

state regulations. Despite the confusion of the common pleas court's analysis, implicit in the court's opinion is an understanding that it is geographically and economically feasible to locate a quarry in the industrial district if the five hundred foot setback provision is eliminated. ["There-fore, we hold that *Section 1302(2)(c) acts* as an unconstitutional exclusion of quarries from the Township." Opinion at 12. (Emphasis added.) The court also observed, in weighing the environmental considerations, "that the Conestoga Limestone Formation underlies the industrially zoned districts as well," Opinion at 15. This observation only makes sense if the court believed that absent the setback requirements a quarry could in fact be located in the industrial zone(s).] Since the ordinance in this form is not exclusionary, there is no basis for ordering the site-specific relief sought by the Company. For these reasons, the court's order was appropriate and was properly af-firmed by the Commonwealth Court, whose order we like-wise affirm.

PAPADAKOS, J., concurs in the result.

LARSEN, J., files a dissenting opinion.

LARSEN, Justice, dissenting.

I dissent. The majority overlooks a key fact in analyzing the opinion of the Court of Common Pleas of Lancaster County and in so overlooking that fact makes a faulty assumption that undermines its resolution of the site specific relief issue. The common pleas court did not strike the one provision from the ordinance to cure its de facto exclusionary effect. Rather, the common pleas court struck the one provision because that court erroneously determined that it was the only provision specifically challenged in the zoning appeal brought by appellant, H.R. Miller Company, Inc. Opinion of the Court at 3 n. 2 (June 23, 1988).[1] Thus,

---

1. Appellant also challenged the constitutionality of the ordinance on the basis that the areas zoned "Industrial" were unsuitable for quarry-ing operations due to their size and location and on the basis that *all* of the conditions for approval of quarrying operations under the

the majority errs in stating that "implicit in the court's opinion is an understanding that it is geographically and economically feasible to locate a quarry in the industrial district if the five hundred foot setback provision is eliminated." Maj. op. at 487.

In addition to finding that the five hundred foot setback provision served to impermissibly exclude quarries from the township, the common pleas court specifically found that it would be both economically and geographically *unfeasible* to locate a quarry in the industrial district in that the designated district contained parcels that were too small for profitable quarry development, and that were substantially developed and unavailable for use as a quarry. Hence, the common pleas court did not "salvage" the remainder of the ordinance by striking a single provision, and the Lancaster Township zoning ordinance continues to operate as a de facto exclusion of quarries.

The issue presented by this appeal is whether appellant, having been successful in its challenge to the validity of a Lancaster Township zoning ordinance, was entitled to site specific relief, i.e., to proceed to develop its property according to the proposed land use plan appellant had presented to the appellee, Board of Supervisors of Lancaster Township, at the time of the challenge to the ordinance.

Appellant operates a twenty-nine acre limestone quarry which is nearly exhausted of its mineral reserves in Lancaster Township, Pennsylvania. The quarry has been in existence for the past 100 years and is a nonconforming use located in a residential district. In 1972, Lancaster Township adopted the revised zoning ordinance at issue herein which ordinance permitted the operation of quarries as a special exception within three industrial districts in the township. Appellant's quarrying activities have been con-

zoning ordinance "(*including* and especially the 500–foot setback rule)" unnecessarily restricted the development of quarries in the township. Appellant's Challenge to Validity of Ordinance and Request for Adoption of Curative Amendment at 3. Reproduced Record at 897a (emphasis added).

ducted essentially upon only two of the five contiguous tracts of land it currently owns.

In 1986, appellant filed a challenge to the validity of the 1972 ordinance along with a request for a curative amendment. Appellant sought to amend the zoning ordinance by proposing the establishment of a mineral recovery district which would lie within the boundaries of appellant's property in Lancaster Township. Following seven evidentiary hearings, the Board of Supervisors upheld the validity of the 1972 ordinance and refused to adopt the curative amendment.

Appellant filed an appeal to the Court of Common Pleas of Lancaster County. No further evidence was taken, and that court found that appellant had sustained its burden of showing that the ordinance was de facto exclusionary. In addition to finding that appellee had erred in disregarding appellant's economic evidence and in finding that the industrial districts could support a viable quarry operation, the court specifically found that the ordinance requirement that a quarry pit be located 500–feet from "all property and street rights-of-way lines," Lancaster Township, Pa., Revised Zoning Ordinance—1972, art. XIII, § 1302.2.(C), was not necessary to preserve the health, safety, or general welfare of the township's residents, and that it served to exclude quarries from the township.

The Court of Common Pleas then analyzed appellant's request for site specific relief pursuant to 53 P.S. § 11011(2) (repealed),[2] and found that appellant's preferred site was

2. This section of the Municipalities Planning Code provided that if a court upheld a challenge to a zoning ordinance, the court could order the development or use described by the successful challenger, but had to first consider:

(i) the locational suitability of the site for the uses proposed including the general location of the site with regard to major roads, sewer facilities, water supplies, schools and other public service facilities or the comprehensive plan and zoning ordinance of the municipality and county if they exist; (ii) the impact of the proposal on regional housing needs, the transportation network, and other public services and facilities; (iii) the suitability of the site for the intention of use proposed by the site's soils, slopes, woodland,

unsuitable for quarry operations in that the site was more suitable for residential development. Accordingly, the court struck the 500–foot setback provision from the ordinance and denied appellant's request for site specific relief. Both parties to this litigation appealed to the Commonwealth Court, which affirmed by memorandum opinion. Cross-petitions for allowance of appeal were filed to this Court. We denied appellee's petition which challenged the finding that part of the 1972 zoning ordinance was exclusionary. We granted appellant's petition for allowance of appeal which challenged the denial of site specific relief, and I would now reverse.

Appellant asserts that the courts may not totally reject the proposed land use of a landowner whose challenge to the validity of an ordinance succeeds. In *Fernley v. Board of Supervisors of Schuylkill Township*, 509 Pa. 413, 425, 502 A.2d 585, 591 (1985), this Court determined that a successful challenger's proposed land use plan *must* be approved by the governing body of the municipality "unless the appellee can show that appellants' plan is incompatible with the site or reasonable, pre-existing health and safety codes and regulations relating to lands, structures or their

wetlands, flood plains, aquifers, natural resources and other natural features; (iv) the impact of the proposed use on the site's soils, slopes, woodlands, wetlands, flood plains, natural resources and natural features, the degree to which these are protected or destroyed, the tolerance of the resources to development and any adverse environmental impacts; and (v) the impact of the proposal on the preservation of agriculture and other land uses which are essential to public health and welfare.

53 P.S. § 11011(2). This section was eliminated by Act No. 170, December 21, 1988, § 101, effective February 21, 1989. Now, it is the responsibility of the governing body of a municipality to consider these five factors when it has determined that a landowner's challenge to the validity of an ordinance has merit. 53 P.S. § 10916.1(c)(5)(i)–(v) (Purdon Supp.1990).

Under the current statute, where a court finds merit to a landowner's challenge to the validity of an ordinance, the court "may order the described development or use approved as to all elements or it may order it approved as to some elements and refer other elements to the governing body, agency or officer having jurisdiction thereof for further proceedings, including the adoption of alternative restrictions, ..." 53 P.S. § 11006–A.

emplacement on lands [which] apply to the development plan." *See also Casey v. Zoning Hearing Board of Warwick Township*, 459 Pa. 219, 328 A.2d 464 (1974) (successful challenger should not be frustrated in his quest for relief by a retributory township); *but see Harbucks, Inc. v. Board of Supervisors of Nockamixon Center Hill*, 126 Pa.Commw. 591, 560 A.2d 851 (1989) (approval for development of quarry would not be given where property contained heavy metals and other hazardous substances which posed serious threat to health of area residents).

Relying primarily upon *Harbucks, supra*, appellee argues that appellant's plan *is* incompatible with the site, and that where incompatibility is shown, the courts are not required to approve, in whole or in part, the land use plan of a landowner who successfully challenges the validity of a zoning ordinance. *Harbucks* is clearly distinguishable from the instant case in two respects. The appellant herein does not seek to develop property that has been placed upon the Environmental Protection Agency's National Priorities List due to its hazardous nature as was the case in *Harbucks*, and the appellant herein does not seek to introduce a new use onto its property. Rather, appellant, by seeking the adoption of its proposed mineral recovery district, is actually seeking to continue a pre-existing, nonconforming use upon a larger area of its property, which property appears, from aerial and zoning maps in the record, to be the last remaining undeveloped land in the township which could support a commercially viable quarrying operation.

By its very nature and definition, a nonconforming use can *never* be shown to be suitable for the site in which it is located.[3] Thus, evidence regarding the impact of appel-

---

**3.** The definition of a nonconforming use is as follows:

A structure the size, dimension or location of which was lawful prior to the adoption, revision or amendment of a zoning ordinance, but which fails to conform to the requirements of the zoning district in which it is located by reasons of such adoption, revision or amendment. *A use which does not comply with present zoning provisions* but which existed lawfully and was created in good faith prior to the enactment of the zoning provision.

Black's Law Dictionary 948 (5th ed. 1979) (emphasis added)

lant's present quarry operation upon neighboring properties, public services, and the environment is *irrelevant* to the disposition of appellant's request for site specific relief.

To determine whether appellant is entitled to site specific relief where appellant has successfully challenged the constitutionality of the applicable zoning ordinance and where appellant is actually seeking to continue a pre-existing nonconforming use upon a larger area of its property, it is useful to look to principles pertaining to nonconforming uses. In *Humphreys v. Stuart Realty Corporation*, 364 Pa. 616, 621, 73 A.2d 407, 409 (1950), this Court held that "a nonconforming use cannot be limited by a zoning ordinance to the precise magnitude thereof which existed at the date of the ordinance; it may be increased in extent by natural expansion and growth of trade, neither is it essential that its exercise at the time the ordinance was enacted should have utilized the entire tract upon which the business was being conducted." *See also In re Peirce's Appeal*, 384 Pa. 100, 119 A.2d 506 (1956); *Borough of Cheswick v. Bechman*, 352 Pa. 79, 42 A.2d 60 (1945). The expansion, however, may not be detrimental to the public welfare, safety, or health. *Peirce's Appeal, supra*, 384 Pa. at 105, 119 A.2d at 509–510. Although the Court in *Humphreys, supra*, noted that the expansion of the nonconforming use cannot be extended over ground not owned and occupied at the time of the passage of the zoning ordinance, 364 Pa. at 620, 73 A.2d at 409, this Court has not prevented nonconforming use expansion onto after-acquired parcels of property in variance cases such as *Brennen v. Zoning Board of Adjustment*, 409 Pa. 376, 187 A.2d 180 (1963), and *Freed v. Power*, 392 Pa. 195, 139 A.2d 661 (1958).[4]

Where a landowner challenges the validity of an ordinance in the context of continuing an existing nonconforming use, the courts are not required to consider the enumerated factors under 53 P.S. § 11011(2) (repealed). *Ruby v. Carlisle Zoning Hearing Board*, 88 Pa.Commw. 70, 75 n. 6, 488 A.2d 655, 659 n. 6 (1985).

4. Appellant acquired four of its five tracts of property after Lancaster Township rezoned the property from industrial to residential in 1960.

Appellant herein has successfully challenged the constitutionality of Lancaster Township's zoning ordinance, and is entitled to site specific relief in that appellant is merely seeking to continue quarrying activities that have been conducted at this location in the township for about 100 years, and it appears that this is the only location in the township that is unoccupied and could readily be adapted for this legitimate use. Appellant has nearly exhausted the limestone reserves in its present twenty-nine acre quarry. For appellant to be able to continue to conduct its business, it must be permitted to move its quarrying operations to other parts of its property. Quarrying is a legitimate and non-objectionable use of land. *Exton Quarries, Inc. v. Zoning Board of Adjustment*, 425 Pa. 43, 228 A.2d 169 (1967); *Lower Allen Citizens Action Group, Inc. v. Lower Allen Township Zoning Hearing Board*, 93 Pa.Commw. 96, 500 A.2d 1253 (1985). Moreover, quarrying is an extensively regulated activity, and, if conducted within statutory and regulatory parameters, is not detrimental to the public welfare, safety, or health. *Id.*

Accordingly, I would reverse the order of the Commonwealth Court as it pertains to the denial of site specific relief to appellant, and I would remand to the governing body of Lancaster Township to issue the necessary permits for appellant to proceed to develop its property according to its proposed land use plan. All other controlling land use restrictions currently in force in the township, of course, must be complied with by appellant before the permits shall issue.