636 A.2d 274

In re Appeal of MILLER AND SON PAVING, INC. from the Decision of the Board of Supervisors of Plumstead Township Denying Its Curative Amendment Application.

Miller and Son Paving, Inc., Appellant.

In re Appeal of MILLER AND SON PAVING, INC. from the Decision of the Board of Supervisors of Plumstead Township Denying Its Curative Amendment.

Board of Supervisors of Plumstead Township, Appellant.

In re Appeal of MILLER AND SON PAVING, INC. from the Decision of the Board of Supervisors of Plumstead Township Denying Its Curative Amendment.

Plumstead Township Civic Association, Appellant.

Commonwealth Court of Pennsylvania.

Argued Oct. 6, 1993.

Decided Dec. 30, 1993.

140

Stephen B. Harris, for appellant, Miller and Son Paving, Inc.

Terry W. Clemons, for appellee, Plumstead Tp.

Before CRAIG, President Judge, and DOYLE, COLINS, PALLADINO, McGINLEY, SMITH and KELLEY, Judges.

COLINS, Judge.

Miller and Son Paving, Inc. (Miller) appeals from the March 30, 1993 order of the Court of Common Pleas of Bucks County (Common Pleas), which affirmed the July 30, 1992 decision of the Board of Supervisors of Plumstead Township (Board) rejecting Miller's challenge to the Plumstead Township Zoning Ordinance of 1970, *as amended* (Ordinance).

Miller had filed an application for a curative amendment to the Ordinance (application), thereby challenging the substantive validity of the Ordinance and alleging that the Ordinance excluded quarrying, bituminous asphalt plants, and ready mix concrete plants from Plumstead Township (Township). Miller's application proposed creation of a "Quarrying and Extraction District," wherein quarrying, bituminous asphalt plants, and ready mix concrete plants would be permitted. Miller specifically sought to have its almost 130 acre property, which was then zoned R–1 Residential, rezoned as a "Quarrying and Extraction District."

The Board conducted hearings on the application from September 1, 1988 through June 15, 1992 and rejected Miller's application, because it determined that the Ordinance did not exclude quarrying, bituminous asphalt plants, or ready mix concrete plants. The Board determined that all three of those uses were permitted in the Limited Industrial District, which is governed by Article X of the Ordinance. Article X provides, in pertinent part, as follows:

Section 1002. *Use Regulations.*

A building may be erected or used and a lot may be used or occupied for any of the following uses and no other, provided that any use permitted in the District shall conform with the Performance Standards set forth in Section 1212 of this Ordinance.

. . . .

6. Manufacture of products from the following previously processed and prepared materials: bone, ceramics, cork, feathers, felt, fur, glass, hair, horn, leather, metal, paper, plaster, plastics, precious and semi-precious stones, rubber, shells, textiles, and tobacco.

7. Manufacture of electrical appliances and supplies; small or hand tools; hardware; toys; jewelry; clocks and watches; musical, professional and scientific instruments; optical goods; machinery and machine tools; electric equipment; motors, iron and steel products, including fabrication and assembly.

. . . .

12. Any industrial use of the same general character as any of the above permitted uses when authorized by the Zoning Hearing Board as a special exception.

Although the Board determined that the application should be denied, it nevertheless considered site specific factors applicable to Miller's property and determined that the property is inappropriate for quarrying. The Board believed that Section 609.1(c) of the Pennsylvania Municipalities Planning Code (Code), 53 P.S. § 10609.1(c),[1] authorized it to do so. Section 609.1(c) provides: "The governing body of a municipality *which has determined that a validity challenge has merit* may accept a landowner's curative amendment, with or without revision, or may adopt an alternative amendment which will cure the challenged defects. The governing body shall consider the curative amendments, plans and explanatory material submitted by the landowner and shall also consider [site specific factors.]" (Emphasis added.)[2]

1. Act of July 31, 1968, P.L. 805, as reenacted and amended by the Act of December 21, 1988, P.L. 1329. Section 609.1(c) was added by the Act of December 21, 1988.

2. Prior to the enactment of Section 609.1 of the Code, in 1988, now repealed *Section 1011* of the Code, formerly 53 P.S. § 11011, authorized a common pleas court to consider site specific factors if that court determined that a challenge to a zoning ordinance had merit.

Miller appealed to Common Pleas, which took no additional evidence, and which issued its decision on March 30, 1993. Common Pleas determined that the Ordinance excluded quarrying, but Common Pleas confirmed the Board's denial of the application, because it concluded that Miller's property is not suitable for quarrying. Determining that Section 609.1 of the Code is procedural and, therefore, can be applied retroactively, Common Pleas reviewed the Board's findings with regard to site specific factors. Common Pleas concluded that the Ordinance is preempted with regard to the operational aspects of a quarry by the Noncoal Surface Mining Conservation and Reclamation Act, Act of December 19, 1984, P.L. 1093 as amended, 52 P.S. §§ 3301–3326. Common Pleas, however, determined that the Board's findings regarding traffic do not relate to the operation of the quarry and are not preempted. Therefore, according to Common Pleas, the Board properly reviewed the quarry's expected effect on traffic in its vicinity. Common Pleas concluded that the Board's findings regarding traffic were supported by substantial evidence, and it agreed that Miller's property is unsuitable for quarrying.

Miller has appealed to this Court and has raised four issues, the first of which concerns whether cross-appeals filed by the Township and by the Plumstead Township Civic Association (Association) should be quashed. We will grant Miller's motion to quash the cross-appeals, because neither the Township nor the Association are aggrieved by Common Pleas' order. Pursuant to Pa.R.A.P. 501, only a party "who is aggrieved by an appealable order . . . may appeal therefrom." The Pennsylvania Supreme Court has stated "that a person who is not adversely affected in any way by the matter he seeks to challenge is not 'aggrieved' thereby and has no standing to obtain a judicial resolution of his challenge." *Wm. Penn Parking Garage, Inc. v. City of Pittsburgh*, 464 Pa. 168, 192, 346 A.2d 269, 280 (1975). To have standing, a party must have an interest which is substantial, direct, and immediate. *Wm. Penn.* "Mere disagreement with the [Board's] legal reasoning or conclusions of law . . . does not confer standing. . . ." *Middletown Township v. Pennsylvania Public Util-*

*ity Commission,* 85 Pa.Commonwealth Ct. 191, 210, 482 A.2d 674, 685 (1984). Our review of this matter reveals that neither the Township nor the Association are aggrieved by Common Pleas' order, and, therefore, they do not have standing to cross-appeal.

Miller's second issue concerns whether Common Pleas erred by failing to grant site specific relief after it concluded that the Ordinance totally excluded quarrying. This Court's scope of review was described as follows in *Valley View Civic Association v. Zoning Board of Adjustment,* 501 Pa. 550, 462 A.2d 637 (1983).

> We are guided in our review of this matter by a number of firmly established legal principles. Since no additional evidence was presented subsequent to the Board's determination, the scope of our review is limited to determining whether the Board committed a manifest abuse of discretion or an error of law.... We may conclude that the Board abused its discretion only if its findings are not supported by substantial evidence.... By 'substantial evidence' we mean such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Id.* at 554–55, 462 A.2d at 639–40 (citations omitted). Our review of this matter reveals that Common Pleas properly determined that the Ordinance totally excludes quarrying, but Common Pleas erred in considering site specific factors. Pursuant to *Casey v. Zoning Hearing Board of Warwick Township,* 459 Pa. 219, 328 A.2d 464 (1974), a ruling that a zoning ordinance totally excludes a legitimate use is not to be enforced prospectively but must apply to the party who successfully litigated that ordinance's invalidity. As the Pennsylvania Supreme Court stated in *H.R. Miller Company v. Board of Supervisors,* 529 Pa. 478, 605 A.2d 321 (1992), "[w]here the cause of an ordinance's invalidity is a *de jure* exclusion of a legitimate use, as in Casey, ... the sole remedy is to allow the use somewhere in the municipality, and equity dictates that this opportunity fall to the successful litigant/landowner." *Id.* at 485, 605 A.2d at 324–25.

The challenge to the Lancaster Township zoning ordinance which served as the basis for *H.R. Miller Company* commenced in 1986, prior to amendment of the Code. At the time that the common pleas court rendered its decision in *H.R. Miller Company*, that court was required to examine site specific factors by then-in-effect Section 1011(2) of the Code, but by the time the Supreme Court rendered its decision in *H.R. Miller Company*, Section 1011(2) of the Code had been repealed, and the analysis of site specific factors had been reassigned to the governing body of a municipality, once that body determined that a challenge had merit, pursuant to Section 609.1(c) of the Code, 53 P.S. § 10609.1(c). Presently a common pleas court, pursuant to Section 1006–A(c) of the Code, 53 P.S. § 11006–A(c), is required to "order the described development or use approved as to all elements or it may order it approved as to some elements and refer other elements to the governing body, agency or officer having jurisdiction thereof for further proceedings, including the adoption of alternative restrictions, in accordance with the court's opinion and order." As the Supreme Court stated in *H.R. Miller Company*, when there is a *de jure* exclusion, "[t]he sole remedy is to allow the use somewhere, and under Casey and Section 1006–A(c) of the Municipalities Planning Code ..., the successful litigant must receive that benefit in the form of at least partial approval of the proposal." *Id.* at 486 n. 5, 605 A.2d at 325 n. 5.

■ The Board determined that quarrying is permitted in the Limited Industrial District by special exception, because quarrying is an industrial use of the same character as those described in Section 1002.6 and Section 1002.7 of the Ordinance. We agree with Common Pleas that the Board erred in this regard. Quarrying is not a manufacturing use similar to those described in Sections 1002.6 and 1002.7. Our dictionary defines quarrying as "the business, occupation, or act of extracting stone, marble, or slate from quarries[.]" Webster's Third New International Dictionary 1860 (1966). It further defines a quarry as "an open excavation usu. for obtaining building stone, slate, or limestone" or as "a source from which

material may be extracted[.]" *Id.* Manufacturing is defined by our dictionary as "mak[ing] (as raw material) into a product suitable for use" or as "mak[ing] from raw materials by hand or by machinery[.]" *Id.* at 1378. In our view, Common Pleas correctly determined that the Ordinance totally excluded quarrying.

█ We note that Common Pleas did not address that aspect of Miller's application which asserted that the Ordinance excluded bituminous asphalt plants and ready mix concrete plants. Our review of this matter reveals that the Board concluded that the Ordinance permits bituminous asphalt plants and ready mix concrete plants by special exception in the Limited Industrial District, and we agree. Both types of plants mix together previously processed materials; they are industrial uses similar to the uses described in Section 1002.6 of the Ordinance. They, therefore, fall within the ambit of Section 1002.12 of the Ordinance. Consequently, we will affirm the Board's decision that the Ordinance does not exclude bituminous asphalt plants or ready mix concrete plants.

█ Miller's third issue concerns whether the Board abused its discretion and erred, "when the Board and its solicitor failed to disqualify themselves after having exhibited settled bias and prejudice against the . . . application." Miller asserts that Supervisors James L. Yost and Michael J. Wallis were biased. We note that Mr. Yost, who became a supervisor early in January 1992, abstained from voting on the application. With regard to Mr. Wallis, we note that Miller first requested his disqualification on January 23, 1992, but Mr. Wallis first sat as a supervisor in the hearing of November 16, 1989. Miller's evidence regarding the alleged bias of Mr. Wallis is attached to its memorandum of law on the bias issue. It consists of a photocopy of what is purported to be a sign-in sheet from an April 5, 1990 hearing conducted by the Pennsylvania Department of Environmental Resources on Miller's application for a noncoal surface mining permit for the quarry which is the subject of this matter. Additionally, there is a photocopy of what is purported to be a 1989 survey by the

League of Women Voters, in which survey Wallis is asked his opinion regarding "the most important challenge facing the township in the next 12 months . . . ?" Miller has not presented evidence or made allegations that Mr. Wallis exhibited bias in his conduct as a supervisor during the hearings in this matter. Common Pleas, relying on *Reilly by Reilly v. Southeastern Pennsylvania Transportation Authority,* 507 Pa. 204, 489 A.2d 1291 (1985) and *In re Blystone,* 144 Pa.Commonwealth Ct. 27, 600 A.2d 672 (1991), *petition for allowance of appeal denied,* 534 Pa. 641, 626 A.2d 1159 (1993), determined that a township supervisor may decide his own recusal motion and that his decision will not be disturbed unless he abused his discretion. "Before it can be said that a judge [or supervisor] should have recused himself the record must demonstrate bias, prejudice, capricious disbelief or prejudgment. . . . If a judge [or supervisor] thinks he is capable of hearing a case fairly his decision not to withdraw will ordinarily be upheld on appeal." *In re Blystone,* 144 Pa.Commonwealth Ct. at 31, 600 A.2d at 674 (citation omitted). We are satisfied that the Board properly disposed of the bias issue with regard to the Township supervisors.

 Miller also asserts that the Board's second solicitor, James M. McNamara, Esq., who assumed his position early in 1992, was biased. Miller argues that Mr. McNamara's law partner, David W. Heckler, twice testified in opposition to the application. He testified first at the April 5, 1990 hearing conducted by the Pennsylvania Department of Environmental Resources on Miller's application for a noncoal surface mining permit for the proposed quarry. He testified second, before the Board, at the September 26, 1991 hearing on Miller's application. According to Miller, "Mr. Heckler's testimony coupled with Mr. McNamara's representation of the Board . . . creates both an actual conflict of interest and the appearance of impropriety." Miller has made no allegations that Mr. McNamara conducted himself in the hearings in any biased or prejudiced way. We note, as did the Board in its decision, that Mr. McNamara acted, in his role as the Township's solicitor, as advisor to the Board and as presiding officer at

the hearing. He did not examine witnesses or act as an advocate. We can find no support, either in the record or in case law, for Miller's position. We are satisfied that the Board properly disposed of the bias issue with regard to the Township's solicitor.

■ Miller's fourth issue concerns whether the Ordinance's exclusion of quarrying constitutes a taking of Miller's property. Common Pleas did not address this issue, because it was rendered moot by Common Pleas' decision on the merits. We agree with the Township and the Association that Miller did not raise the issue of a taking before the Board, and, therefore, this issue has been waived. More importantly, we believe that Miller cannot properly raise the taking issue in this zoning context. Miller should have raised this issue in a proceeding pursuant to the Eminent Domain Code, Act of June 22, 1964, Special Sess., P.L. 84, *as amended,* 26 P.S. §§ 1–101—1–903.

Accordingly, the opinion and order of Common Pleas are affirmed in part and reversed in part. Common Pleas is affirmed insofar as it ruled that the Ordinance excludes quarrying. It is affirmed insofar as it impliedly ruled that the Ordinance does not exclude bituminous asphalt plants and ready mix concrete plants. It is reversed insofar as it ruled that Miller is not entitled to site specific relief. This matter is remanded to Common Pleas for a determination, pursuant to Section 1006–A(c) of the Code, 53 P.S. § 11006–A(c), regarding whether Miller's use of the property as a quarry is "approved as to all elements" or "approved as to some elements [requiring] other elements [to be referred] to the governing body ... for further proceedings...."

### ORDER

**AND NOW,** this 30th day of December, 1993, the opinion and order of Common Pleas are affirmed in part and reversed in part. Common Pleas is affirmed insofar as it ruled that the Ordinance excludes quarrying. It is affirmed insofar as it impliedly ruled that the Ordinance does not exclude bitumi-

nous asphalt plants and ready mix concrete plants. It is reversed insofar as it ruled that Miller is not entitled to site specific relief. This matter is remanded to Common Pleas for a determination, pursuant to Section 1006–A(c) of the Pennsylvania Municipalities Planning Code, 53 P.S. § 11006–A(c), regarding whether Miller's use of the property as a quarry is "approved as to all elements" or "approved as to some elements [requiring] other elements [to be referred] to the governing body ... for further proceedings...."

Jurisdiction relinquished.

DOYLE, J., dissents.