Appeal of the **BARTKOWSKI INVESTMENT GROUP, INC. From the Decision of the Zoning Hearing Board of Haverford Township Dated March 1, 2012.**

**Appeal of: Bartkowski Investment Group, Inc.**

Commonwealth Court of Pennsylvania.

Argued Sept. 11, 2014.

Decided Dec. 8, 2014.

Reargument Denied Jan. 27, 2015.

---

Marc B. Kaplin, Blue Bell, for appellant.

James J. Byrne, Jr., and Kelly S. Sullivan, Media, for appellee Township of Haverford.

Michael G. Crotty, Chester Springs, for appellees Sandra Donato, Mark Capriotti, Michelle Collier and Margaret Murr.

William E. Malone, Jr., Media, for appellee Zoning Hearing Board of Haverford Township.

BEFORE: RENÉE COHN JUBELIRER, Judge, and P. KEVIN BROBSON, Judge, and ANNE E. COVEY, Judge.

OPINION BY Judge BROBSON.

Before the Court is an appeal from a decision by the Court of Common Pleas of Delaware County (trial court), which reversed in part a decision of the Zoning Hearing Board of Haverford Township (ZHB) on the substantive validity challenge of Appellant Bartkowski Investment Group, Inc. (BIG) to the Haverford Township (Haverford) zoning ordinance (ZO). The trial court held that Haverford failed to justify a municipality-wide exclusion of billboards in its zoning ordinance. Nonetheless, the trial court found substantial evidence in the record to support the ZHB's determination that health, safety, and welfare concerns justified rejection of BIG's proposed billboards in Haverford. For the reasons set forth below, we will affirm the trial court in part, but will remand the matter to the trial court for additional proceedings.

## I. BACKGROUND

On or about February 19, 2009, BIG filed applications with the ZHB, seeking approval to construct several billboards in Haverford. In those applications, BIG raised substantive validity challenges to the ZO based upon the alleged municipality-wide exclusion of billboards. Although the original applications proposed the construction of billboards on six sites in Haverford, only four sites are currently at issue: (1) 2040 West Chester Pike, (2) 1157 West Chester Pike, (3) 658 Lancaster Avenue, and (4) 600 Lancaster Avenue.

The ZHB conducted a series of twenty-seven hearings on the applications, between May 7, 2009 and February 2, 2011. We briefly summarize the pertinent testimony the ZHB deemed credible. Haverford's Deputy Chief of Police, John Viola, testified regarding a report he prepared of accidents occurring on West Chester Pike and Lancaster Avenue over a three-year period. In that time period, twenty-one "reportable" accidents occurred and sixty-one "non-reportable" accidents occurred on a stretch of Lancaster Avenue in Haverford, and 190 reportable accidents and 570 non-reportable accidents occurred on a stretch of West Chester Pike in Haverford. (R.R. at 1149a–52a; 1155a–56a; 1154a.) A total of six of the accidents that occurred on Lancaster Avenue and West Chester Pike involved pedestrians. (R.R. at 1155a–56a.) During that three-year period, Haverford Police issued thirty-nine traffic citations along the one and one half mile stretch of Lancaster Avenue in Haverford and 3,369 citations along West Chester Pike. (R.R. at 1155a–56a.)

Chief Viola also testified regarding specific traffic concerns relating to 2040 West Chester Pike. Chief Viola testified that the area around this location has high traffic volume and poor traffic flow because of vehicles attempting to merge into one lane

in order to access the Blue Route or head west on West Chester Pike. (R.R. at 1159a.) Chief Viola also noted that there are bus stops on both the east and west sides of West Chester Pike near the proposed billboard locations, which generate pedestrian traffic, despite the lack of a pedestrian crossing. (R.R. at 1160a.)

Haverford offered the testimony of Jerry Wachtel, C.P.E, who the ZHB accepted as an expert in the fields of human factors, ergonomics, and engineering psychology. (Finding of Fact (FF) 110, 111, April 23, 2010 video deposition transcribed in original record at 32.) Mr. Wachtel observed that West Chester Pike is a "partial control of access" roadway, that is, one that limits the manner of access to and from the roadway. (Id. at 66–67.) West Chester Pike has a median barrier that separates the east and west bound lanes of traffic. (Id.) Mr. Wachtel observed that numerous pedestrian crossings, intersections, driveways, traffic signals, and a shoulder lane used by buses for periodic stops make complete access control unavailable on the portion of West Chester Pike. (Id.) Mr. Wachtel testified that such roadways that have only partial access control are less safe than roadways that have full control of access. (Id. at 67–68.) With regard to the stretch of Lancaster Pike where BIG proposes to erect its billboards, Mr. Wachtel testified that the area of roadway has no control of access. (Id. at 68.) There is no central median separating eastbound and westbound traffic. (Id.)

Mr. Wachtel classified signage into three general categories, in order of importance: (1) official (government-erected) signage; (2) on-premises advertising signage; and (3) off-premises advertising signage. (Id. at 77.) All, according to Mr. Wachtel, have the potential to distract drivers. (Id. at 84.) Mr. Wachtel opined, however, that

the proposed off-site signs—i.e., the billboards—of the dimensions proposed by BIG "have the potential to be more distracting than [the] typical on-premises sign." (Id. at 85, 93.) Mr. Wachtel related his general concerns about the proposed billboards' dimensions relative to the proposed locations on along West Chester Pike and Lancaster Avenue. With respect to each location, he identified specific conditions that presented challenges to drivers, requiring a heightened degree of attentiveness to the roadway and traffic. (Id. at 95–119.)

Haverford offered the testimony of Thomas J. Comitta as an expert regarding the development of land planning, zoning, and land development ordinances. (R.R. at 1343a.) The ZHB accepted his testimony as credible for the purpose of providing an opinion regarding the impact of the proposed billboards on the "scenic, historic, and aesthetic values of Haverford." (FF no. 150.) Mr. Comitta testified that the placement of the proposed billboards "would increase the incompatibility between massive billboards sitting on top of roofs of buildings that are highly visible and the normative streetscape environment and the character that I have known for the last 55 years" (R.R. at 1406a) and would be incompatible with the goals and objectives of Haverford's comprehensive plan (R.R. at 1464a).

Mr. Comitta testified that the proposed billboards were inconsistent with the character of the Haverford Historic District, an area from which the billboards would be visible, and that the billboards would have an adverse impact on Haverford's historic and scenic environment. (R.R. at 1406a–07a.) As to the billboard BIG proposes to erect at 658 Lancaster Avenue, Mr. Comitta offered several reasons why the proposed billboard at that site would have an adverse impact on the historic and scenic

environment, including, *inter alia,* the following: (1) the disproportionate size and scale of the billboard when compared to existing buildings and streetscape; (2) close proximity of the billboard to and visibility from residential neighborhoods and a neighborhood commercial environment; (3) the billboard violates several aspects of the Haverford Comprehensive Plan; (4) the billboard·cannot be buffered or screened; (5) the billboard is an "undesirable land use"; (6) the billboard does not comply with other ZO provisions; and (7) "it is unlike anything else in the viewshed and should not be permitted in historical and residential neighborhoods." (R.R. at 1461a–67a.)

· With regard to the billboard BIG proposes to erect at 600 Lancaster Avenue, Mr. Comitta testified that the billboard is too close to the billboard BIG proposes to erect at 658 Lancaster Avenue and would adversely affect the preservation of the scenic, historic, and aesthetic environment of the area. (R.R. at 1469a.) Mr. Comitta also testified regarding the billboards BIG proposes to erect on West Chester Pike. Mr. Comitta opined that those proposals were inappropriate for many of the same reasons he found the use inappropriate for Lancaster Avenue and that they are incompatible with the land uses in those locations and out of character with the surrounding neighborhoods. (R.R. at 1475a.) Finally, Mr. Comitta testified that billboards of the size proposed would have an adverse effect on the scenic, historic, and aesthetic values of the·environment of Haverford. (R.R. at 1483a.)

Haverford also presented the testimony of David Pennoni, an expert in the field of engineering, who testified regarding the ramifications of structural problems and possible collapse of the proposed billboards. Mr. Pennoni testified that there have been three recorded tornados in the Township and that winds associated with tornadoes may cause concern for excessive wind load that could affect billboards. (R.R. at 1205a.) Mr. Pennoni testified regarding potential safety issues relating to falling billboards. For example, with regard to the billboard BIG proposes to erect at 2040 West Chester Pike, Mr. Pennoni testified that if the billboard, parts of the billboard, or ice on the billboards were to fall, the debris would impact travel along West Chester Pike and a parking lot that serves commercial buildings near the billboard. (R.R. at 1209a–10a.) Mr. Pennoni testified that the failure of or falling parts from the billboard proposed to be located at 1330 West Chester Pike could adversely affect overhead utility lines. (R.R. at 1214a–15a.) With regard to the billboard proposed at 658 Lancaster Avenue, Mr. Pennoni testified that the failure or collapse of a billboard at that location could impact travel ori Lancaster Avenue and a building located below the proposed billboard structure, as well as have an adverse impact on an alleyway and utility wires that run along the alleyway behind commercial shops located on Lancaster Avenue. (R.R. at 1220a–22a.) As to the billboard BIG proposes to erect at 600 Lancaster Avenue, Mr. Pennoni testified that the failure of the billboard at that location could affect a residential area, overhead power and communication lines, and commercial establishments located along Lancaster Avenue. (R.R. at 1224a–26a.)

On February 16, 2012, the ZHB issued an oral decision denying BIG's substantive validity challenge. A written decision, containing 226 findings of fact and 29 conclusions of law, followed on or about March 1, 2012 (ZHB Decision). The ZHB relied in great part on the testimony and opinions of Messrs. Wachtel, Comitta, and Pen-

noni.[1] The Board rejected BIG's claim that the ZO was invalid because it prohibited billboards. Though finding that the ZO prohibits "billboards," the ZHB held that it does not prohibit all non-accessory outdoor advertising signs. (ZHB Decision at 44, Conclusion of Law No. 13.) According to the ZHB, for BIG to prevail on its substantive validity challenge, BIG was required to establish that the ZO prohibited all non-accessory outdoor advertising signs, and not just billboards. (*Id.*)

The ZHB alternatively concluded that even if the ZO improperly excludes billboards, Haverford demonstrated that health and safety concerns support the prohibition of BIG's proposed billboards. In its conclusion of law 18, the ZHB reflected on the evidence relative to the stretches of roadway between proposed billboard locations. (*Id.* at 45–46.) The ZHB found that the evidence demonstrated that the proposed billboards and proposed sites were not appropriate based on "public health, safety and welfare goals of traffic safety and community aesthetics." (*Id.* at 47.) The ZHB also determined that the billboards would constitute a second primary use on the single lots upon which BIG proposes to erect the signs, and that provisions of the ZO prohibit second primary uses on single lots. Finally, the ZHB determined that the proposed billboards, individually, violated various provisions of the ZO. (*Id.* at 47–48.)

BIG sought the trial court's review of the ZHB Decision pursuant to Article X–A of the Municipalities Planning Code (MPC), governing land use appeals.[2] Haverford and a group of residents (Resi-

dents) intervened to oppose BIG's appeal. The Township of Lower Merion (Lower Merion), which shares a border with Haverford close to the proposed billboard sites, also intervened to oppose BIG's land use appeal. The trial court did not take any evidence, relying instead on the record created before the ZHB. By order dated May 1, 2013, the trial court established a briefing schedule and set a date for oral argument.

In its principal brief to the trial court, BIG challenged the ZHB's determination that the ZO was not unconstitutionally exclusionary as to billboards. In the event that the trial court agreed with BIG on this issue, BIG requested that the trial court exercise its authority under Section 1006–A(c) of the MPC, which provides:

If the court finds that an ordinance or map, or a decision or order thereunder, which has been brought up for review unlawfully prevents or restricts a development or use which has been described by the landowner through plans and other materials submitted to the governing body, agency or officer of the municipality whose action ... is in question on the appeal, it may order the described development or use approved as to all elements or it may order it approved as to some elements and refer other elements to the governing body, agency or officer having jurisdiction for further proceedings, including the adoption of alternative restrictions, in accordance with the court's opinion and order.

BIG specifically asked the trial court to conduct a hearing to determine "*the meas-*

---

1. BIG countered with testimony of experts concerning the public health, safety, and welfare impacts of its proposed billboards. The ZHB either rejected each proposed witness as an expert in his specific field or rejected his testimony as unpersuasive or not credible (based in two instances upon the witnesses'

affiliation with outdoor advertising associations). (ZHB Decision at 34–40.)

2. Act of July 31, 1968, added by the Act of December 21, 1988, P.L. 1329, *as amended,* 53 P.S. §§ 11001–A to 11006–A.

*ure of* site-specific relief BIG is entitled to as the successful challenger of the [ZO]." (Certified Record (C.R.) No. 26 at 27 (emphasis added).)

Following briefing and oral argument, the trial court issued a Decision on December 23, 2013. (C.R. No. 32.) The Decision contained findings of fact, which, for the most part, aligned with some of the ZHB's factual findings. The trial court also set forth its standard of review and its view of the legal standard governing the relief sought by BIG. In its analysis, the trial court, however, gave weight to the ZHB's acknowledgement, noted above, that the ZO effectively excluded billboards "of the dimension and physical configuration" that BIG requested. (*Id.* at 23.) Nonetheless, it concluded that Haverford presented sufficient evidence to support the ZHB's decision that BIG's proposed billboards— measuring 14′ by 48′, for a total of 672 square feet—were not suitable for the proposed sites. "As such," the trial court held, "the March 1, 2012 decision of the ZHB is affirmed *to the extent* that the billboards proposed by [BIG] were not suitable for the proposed sites." (*Id.* at 24 (emphasis added).)

On or about January 6, 2014, BIG filed a timely notice of appeal, challenging the trial court's Decision. The trial court directed BIG to file a statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). BIG filed its statement on or about January 27, 2014, raising the following errors:

1. The Court committed an error of law and/or abused its discretion in determining that the findings of fact contained in the [ZHB's] decision were supported by substantial evidence.

2. The Court committed an error of law and/or abused its discretion in fail-

ing to conclude that the [ZO] excludes all billboards.

3. The Court committed an error of law and/or abused its discretion in failing to conclude that the record does not provide adequate justification to support the total exclusion of all billboards from Haverford Township.

4. The Court committed an error of law and/or abused its discretion in failing to conclude that the [ZO]'s total exclusion of billboards is unconstitutional.

5. The Court committed an error of law and/or abused its discretion in determining that the [ZHB] had jurisdiction to determine BIG's entitlement to site-specific relief.

6. The Court committed an error of law and/or abused its discretion in determining that the [ZHB] was justified in denying BIG any site-specific relief based upon the Township's evidence concerning billboards of one specific size.

7. The Court committed an error of law and/or abused its discretion in failing to determine that BIG, as a successful challenger of [an] unconstitutionally exclusionary zoning ordinance, is entitled to some measure of site-specific relief.

(C.R. No. 37.) On or about March 5, 2014, the trial court issued an opinion, presumably pursuant to Pennsylvania Rule of Appellate Procedure 1925(a) (1925(a) Opinion). But short of setting forth the issues raised by BIG in its statement, the opinion merely recasts the trial court's earlier Decision, without specifically addressing each of the foregoing issues: "[T]he March 1, 2012 decision of the ZHB was affirmed to the extent that the billboards proposed by BIG were not suitable for the proposed sites." (1925(a) Opinion at 22.)

## II. DISCUSSION

Section 916.1 of the MPC [3] authorizes a landowner to challenge the validity of a local ordinance on substantive grounds. The landowner may pursue that substantive validity challenge in one of two fora: (1) before the local zoning hearing board, or (2) before the governing body (*e.g.*, board of supervisors, council, board of commissioners, etc.) by filing a request for a curative amendment. Section 916.1(a) of the MPC. Here, BIG chose to challenge the validity of the ZO before the ZHB and not by seeking a curative amendment from the governing body. Where a zoning hearing board hears a substantive validity challenge, the MPC provides:

Based upon the testimony presented at the hearing or hearings, the governing body or the zoning board, as the case may be, *shall determine whether the challenged ordinance or map is defective,* as alleged by the landowner.... *If a challenge heard by a zoning hearing board is found to have merit, the decision of the zoning hearing board shall include recommended amendments to the challenged ordinance which will cure the defects found.* In reaching its decision, the zoning hearing board shall consider the amendments, plans and explanatory material submitted by the landowner and shall also consider:

(i) the impact of the proposal upon roads, sewer facilities, water supplies, schools and other public service facilities;

(ii) if the proposal is for a residential use, the impact of the proposal upon regional housing needs and the effectiveness of the proposal in providing housing units of a type actually available to and affordable by classes of persons otherwise unlawfully excluded by the challenged provisions of the ordinance or map;

(iii) the suitability of the site for the intensity of use proposed by the site's soils, slopes, woodlands, wetlands, flood plains, aquifers, natural resources and other natural features;

(iv) the impact of the proposed use on the site's soils, slopes, woodlands, wetlands, flood plains, natural resources and natural features, the degree to which these are protected or destroyed, the tolerance of the resources to development and any adverse environmental impacts; and

(v) the impact of the proposal on the preservation of agriculture and other land uses which are essential to public health and welfare.

Section 916.1(c)(5) of the MPC (emphasis added). In this case, the ZHB determined that BIG's substantive validity challenge lacked merit. Accordingly, the ZHB did not include in its decision recommended amendments to the challenged ordinance.

■ In an appeal from a trial court's order affirming a decision of a zoning hearing board, where the trial court takes no additional evidence, our review is limited to considering whether the zoning hearing board abused its discretion or erred as a matter of law. *Interstate Outdoor Adver. v. Zoning Hearing Bd. of Warrington Twp.*, 39 A.3d 1019, 1024 n. 5 (Pa.Cmwlth. 2012), *appeal denied*, 621 Pa. 680, 75 A.3d 1283 (2013). The zoning hearing board abuses its discretion when it issues findings of fact that are not supported by substantial record evidence:

---

**3.** Act of July 31, 1968, added by the Act of December 21, 1988, P.L. 1329, *as amended,* 53 P.S. § 10916.1.

Substantial evidence is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion. The Zoning Hearing Board as fact finder is the ultimate judge of credibility and resolves all conflicts in the evidence. If the Zoning Hearing Board's findings of fact are based upon substantial evidence, those findings of fact are binding upon this Court for purposes of appellate review.

*Eichlin v. Zoning Hearing Bd. of New Hope Borough*, 671 A.2d 1173, 1175 (Pa. Cmwlth.1996).

In its principal brief, BIG sets forth five questions, which are coterminous with the seven issues BIG identified in its statement of errors filed with the trial court.[4] We view the resolution of the matter, however, as requiring analysis of two core questions: (1) whether the ZO is unconstitutionally exclusionary as to billboards, and, if so, (2) whether and to what extent BIG is entitled to judicial relief. Consideration of these questions will also require us to consider and expound upon the appropriate standard and scope of review of trial courts in this type of land use appeal.

## A. Exclusionary Ordinance Question

■ This Court has adopted the following framework when considering the type of substantive validity challenge that BIG raises here:

Zoning ordinances in Pennsylvania enjoy a presumption of constitutionality and validity, and the party challenging one bears a heavy burden of proving otherwise. In order to overcome this presumption of constitutionality, the challenger must demonstrate that the ordinance totally excludes an otherwise legitimate use. Unless the challenger demonstrates that the ordinance in question completely or effectively excludes a legitimate use, the challenger has failed to carry its burden. To prove total or effective exclusion of a permitted use, the challenger can show that the ordinance is either *de jure* or *de facto* exclusionary. A *de jure* exclusion exists where an ordinance, on its face, totally bans a legitimate use. A *de facto* exclusion exists where an ordinance permits a use on its face, but when applied, acts to prohibit the use throughout the municipality. ·

*Interstate Outdoor*, 39 A.3d at 1024–25 (citations omitted).[5] If the challenger meets this heavy burden, the burden then shifts to the municipality to show, through evidence, that the total exclusion "bears a substantial relationship to the public

---

**4.** BIG raises the following issues: (1) whether the trial court erred by failing to hold that Haverford's ZO is unconstitutionally exclusionary as to billboards; (2) whether the trial court erred by concluding that BIG's challenge to the ZO was limited to a claim that the ZO excludes only one type of billboard and not all billboard uses; (3) whether the trial court erred by failing to conclude that BIG, by proving that the ZO is exclusionary, is entitled to some form of judicial relief; (4) whether the trial court erred by failing to hold that the ZHB lacks the power to award relief to a successful challenger to the exclusionary substance of a zoning ordinance; and (5) whether the trial court erred by failing to provide BIG with judicial relief based upon its challenge to the ZO billboard exclusion,

which BIG claims the trial court is required to consider in *de novo* fashion, without regard or deference to the ZHB's factual findings and conclusions of law.

**5.** The qualified constitutional right at issue is the right to enjoyment of private property protected under Article I, Section 1 of the Pennsylvania Constitution. It is a qualified right because, as the Pennsylvania Supreme Court has recognized, the right may be "reasonably limited" by zoning ordinances enacted pursuant to a municipality's police powers. *C & M Developers, Inc. v. Bedminster Twp. Zoning Hr'g Bd.*, 573 Pa. 2, 820 A.2d 143, 150 (2002).

health, safety, morality, or welfare." *Twp. of Exeter v. Zoning Hearing Bd. of Exeter Twp.*, 599 Pa. 568, 962 A.2d 653, 661 (2009) (*Exeter Twp.*). Such a showing by the municipality will rescue an otherwise exclusionary ordinance from a constitutional challenge.

Here, BIG argues that the ZO is *de jure* exclusionary because it expressly prohibits billboards within Haverford.[6] Section 182–106 of the ZO provides for a general definition of "Sign" as follows:

> Any name, nameplate, *billboard*, poster, panel, display, illustration, structure or device used for visual communication which is affixed, painted or represented, directly or indirectly, upon a building or other outdoor surface for the purpose of bringing the subject thereof to the attention of the public or advertising a business, commodity, service or product or for identifying a business structure or use of land[.]

(Emphasis added.) Under the general definition of "Sign" are several additional defined terms, one of which is "Sign, Advertising": "A sign which directs attention to a business, commodity, service or entertainment conducted, *sold or offered else-where* than upon the property on which the sign is located. 'An advertising sign' *shall include a commercial billboard.*" (Emphasis added.)

A commercial billboard, then, according to the above definitions in the ZO, is a type of off-premises advertising sign. In this regard, the definitions are consistent with our Supreme Court's recognition in *Exeter Township* that billboards are but one form of "outdoor advertising media" that a municipality may regulate through its police powers. *Exeter Twp.*, 962 A.2d at 660. "However," the Supreme Court cautioned, "since billboards are not objectionable *per se,* a blanket prohibition on billboards without justification cannot pass constitutional muster." *Id.* (footnote omitted).[7]

In reviewing the parties' arguments and the record below, there appears to be agreement among the parties, the ZHB,[8] and the trial court that the ZO prohibits billboards outright within Haverford. This conclusion is borne out of a reading of the relevant ZO provisions in light of the ZO classification of a "commercial billboard" as a form of off-premises advertising sign. Section 182–701.B(6) of the ZO provides that "[a]ll signs, *other than ex-*

---

6. We note that the trial court appears to have examined the issue raised by BIG in its land use appeal more narrowly, that being whether the ZO excluded BIG's *proposed* billboards from Haverford. The trial court mischaracterized BIG's substantive validity challenge. BIG challenged the ZO because it excludes all billboards, not billboards of the size and configuration that BIG proposed in its plans.

7. In light of the Supreme Court's holding in *Exeter Township*, we reject the argument, raised by Haverford, Lower Merion, and Residents, that because Section 154–1 of the Haverford Township General Code (not the ZO) regulates the placement of what Haverford calls "bench signs," we should affirm the ZHB's decision that the ZO is not exclusionary. We point out, however, that to the extent Section 154–1 of the Haverford General Code allows off-premises advertising in the form of a "bench sign," it appears to be in conflict with the ZO, which, as set forth below, prohibits such signage in Haverford. Both the ZO (Section 182–701.A) and the Haverford General Code (Section 154–1.B) provide that in the event of a conflict, the more restrictive regulation controls. That would be the ZO. Moreover, whether Haverford, by variance or some other device, has allowed other forms of outdoor, off-premises advertising—*e.g.*, on shopping carts, at ball fields, on bus shelters—on a case-by-case basis does not preclude this Court from addressing the question of whether the zoning ordinance is, on its face, unconstitutional.

8. "[T]he Township of Haverford does prohibit billboards." (ZHB Decision at 44.)

*empt signs,* shall be erected on the same lot as the use to which it pertains." (Emphasis added.) Section 182–701.B(9) provides that signs "are intended for purposes of identification and information and not for advertising of a product or service." Roughly translated, these provisions mean that the ZO generally prohibits all off-premises advertising signs, including billboards, subject to certain exemptions. Those exemptions include the following:

(a) Decorations for a recognized officially designated holiday, provided they do not create traffic or fire hazards.

(b) Official signs.

(c) Directional signs not exceeding two square feet.

(d) Memorial or historic markers, when approved by the Planning Commission and when not more than six square feet in area.

(e) Nameplate signs not exceeding 108 square inches in size, provided that only one such nameplate shall be exempted per parcel of land.

(f) Real estate rental or sale signs not exceeding four square feet, advertising the sale, rental, or lease of the premises or part of the premises on which the sign is displayed.

(g) Temporary signs advertising political parties or candidates for election, provided that they do not exceed six square feet. Election/political signs may not be erected within any right-of-way and may not be erected or placed upon property owned by Haverford Township except on Election Day within 50 feet of the Township property used as a polling place.

None of these exemptions would allow for a "Sign, Advertising," as defined by the ZO, generally, or a billboard, a type of advertising sign, specifically.

■ Because the ZO totally excludes billboards as a permitted use, the burden before the ZHB shifted to Haverford to save the ZO from a finding of unconstitutionality by showing, through evidence, that the total exclusion of billboards from Haverford "bears a substantial relationship to the public health, safety, morality, or welfare." *Exeter Twp.,* 962 A.2d at 661. We have held that "the constitutionality of a zoning ordinance which totally excludes a legitimate use must be highly scrutinized and, thus, such ordinance must bear a *more* substantial relationship to a stated public purpose than a regulation which merely contains a use to a certain zoning district." *Adams Outdoor Adver., Ltd. v. Hanover Twp. Zoning Hearing Bd.,* 159 Pa.Cmwlth. 372, 633 A.2d 240, 245 (1993) (emphasis in original). When courts examine a zoning ordinance that fails to permit a particular lawful use throughout a municipality, the defending municipality must present evidence to support the ban of the use throughout the municipality, and not simply rely upon evidence demonstrating only that health, safety, and welfare concerns support the prohibition on the particular sites upon which an applicant proposes to develop or construct the prohibited use. *See Exeter Twp.,* 962 A.2d at 653 ("[A] blanket prohibition without justification cannot pass constitutional muster."); *see also Application of Friday,* 33 Pa.Cmwlth. 256, 381 A.2d 504, 507 (1978) (en banc) (holding site suitability irrelevant to question of constitutional validity of municipality-wide use prohibition). While a zoning hearing board may consider a challenge to its zoning ordinance in the context of site specific applications for relief, as was the case here, the exclusionary challenge is a challenge based on the premise that a particular use is excluded *everywhere* in the municipality.

BIG argues that the ZHB erred because it upheld the validity of the ZO based on

evidence and findings relating to the suitability or appropriateness of BIG's proposed billboards at the proposed locations on Lancaster Avenue and West Chester Pike. BIG contends that because Haverford failed to present any evidence that no billboard of any configuration would be suitable at any site within Haverford, Haverford failed to satisfy its burden of justifying the ZO's municipality-wide exclusion of billboards. BIG thus must prevail on its substantive validity challenge. Rather than directly responding to BIG's contention, Haverford, Lower Merion, and Residents rely on the evidence before the ZHB and the ZHB's findings in support of their continued belief that (a) the ZO is not unconstitutional, and (b) even if it were, BIG's proposed billboards are inappropriate.

In examining the ZHB's decision under our appellate standard of review, it is apparent that the ZHB believed that even *if,* as we conclude above, the ZO was exclusionary as to billboards, the ZO could be salvaged if Haverford could establish by substantial evidence that exclusion of BIG's *proposed* billboards bore a substantial relationship to health, safety, and welfare concerns. Findings of fact 110 through 185 are devoted to such analysis. The ZHB first recounts the testimony of Mr. Wachtel. In doing so, the ZHB finds that Mr. Wachtel "was hired to do a review of the *proposed billboard sites in Haverford Township on both West Chester Pike and Lancaster Avenue.*" (ZHB FF 115 (emphasis added).) In subsequent findings, the ZHB recounts Mr. Wachtel's testimony regarding roadway conditions at the locations of the *proposed* billboards. (*Id.* 116–25.) The ZHB found "that off-premise (sic) signs *such as the billboard being proposed by BIG in this matter* have the potential to be more distracting than on-premise (sic) signs *due to their size* and ability to distract the driver." (*Id.* 135

(emphasis added).) He distinguished "off-premise (sic) signs *such as the billboards being proposed by BIG in this matter* and on-premise (sic) signs," concluding that on-premises advertising signs tend to have fewer characters and simpler messages. (*Id.* 136 (emphasis added).) He testified that BIG's proposed billboards will be "taller and higher above the ground" than other on-premises advertising signs. (*Id.* 137.) Finally, Mr. Wachtel opined that each billboard proposed by BIG at each proposed site was "inappropriate":

141. Mr. Wachtel testified clearly and unequivocally that it was his professional opinion that the proposed billboard at 1330 West Chester Pike is inappropriate due to the challenges that confront the drivers and the potential for driver distraction when drivers need to pay attention to pedestrians, buses, and vehicles illegally using the shoulder.

. . .

143. Mr. Wachtel testified clearly and unequivocally that it was his professional opinion that the proposed billboard at 1157 West Chester Pike is inappropriate due to the size, height and illumination of the proposed billboard as well as the potential for driver distraction at a time and a place where drivers are loaded with a high degree of task demands.

. . .

145. Mr. Wachtel testified clearly and unequivocally that it was his professional opinion that the proposed billboards at 600 and 658 Lancaster Avenue are inappropriate due to their size, height and illumination, because this area imposes numerous task demands on the driver and because there is evidence of existing traffic concerns in the area.

146. The Board finds Mr. Wachtel to be credible and convincing and accepts as fact his testimony *that the five billboards proposed, given their size, height, illumination, the specificity of their locations and the demand on the drivers at those locations,* are inappropriate and would not be conducive to promoting the public health, safety and welfare.

(Record references omitted; emphasis added.)

The ZHB next relies on the testimony of Mr. Comitta. The Board makes several findings, recounting Mr. Comitta's testimony relating generally to the purposes and goals of the ZO and Haverford's Comprehensive Plan. (ZHB FF 153–57.) Following these general findings, however, the ZHB then focuses again on testimony directed toward the proposed billboards. The ZHB found that "Mr. Comitta prepared a View Shed Analysis of *Proposed Billboards on Lancaster Pike,*" showing the areas within Haverford and Lower Merion from which the proposed billboards would be visible. (*Id.* 158 (emphasis added).) He prepared a similar view shed analysis with respect to BIG's proposed billboards on West Chester Pike. (*Id.* 159.) The ZHB then recounts several reasons, according to Mr. Comitta, why "the proposed billboards" are inappropriate in general, such as: (1) inconsistency with planning initiatives; (2) inconsistent with the neighborhoods; (3) incongruous land uses detrimental to the public welfare; and (4) detrimental impacts on the historic and scenic environment in Haverford. (*Id.* 160–64.) The ZHB then recounts Mr. Comitta's opinions directed at each proposed billboard, site-by-site:

165. Mr. Comitta testified clearly and unequivocally that, with regard to the billboard proposed at 658 Lancaster Avenue, the size and scale of the proposed billboard is disproportionate to the buildings and streetscape that exist. The billboard is also proposed too close in proximity to both residential neighborhoods and to the neighborhood commercial environment, from which the billboard will be visible.... The proposed billboard also violates several principles of the comprehensive plan and is out of character with the streetscape environment. The billboard cannot be buffered. It is also too close to the proposed billboard located at 600 Lancaster Avenue. The billboard is not compliant with many provisions of the zoning ordinance and is unlike anything else in the view shed.

166. Mr. Comitta testified clearly and unequivocally that, with regard to the billboard located at 600 Lancaster Avenue, it is too close in proximity to the billboard located at 658 Lancaster Avenue. The proposed billboard at 600 Lancaster Avenue would be adverse to the preservation of the scenic, historic and aesthetic environment of that area.

167. Mr. Comitta testified clearly and unequivocally that, with regard to the billboards proposed at 1157 West Chester Pike and 1330 West Chester Pike, the proposed structures are incompatible with land use and out of character with the surrounding neighborhoods.

. . .

169. This Board finds Mr. Comitta to be credible and convincing *and accepts as fact his testimony that the five billboards proposed are incongruous with the promoted principles of the Township of Haverford and are detrimental to the public welfare.*

(Record references omitted; emphasis added.)

Lastly, the ZHB relies on the testimony of Mr. Pennoni, whom the ZHB accepted as an expert in civil engineering. (ZHB FF 170.) Though the ZHB recounts Mr.

Pennoni's testimony over the course of several factual findings (ZHB FF 171–83), the gist of Mr. Pennoni's testimony is summarized by the Board in two of those findings:

171. Mr. Pennoni testified clearly and unequivocally as to two primary concerns regarding *the proposed billboards:* (i) the structures themselves and any repercussions with some problems with the structures; and (ii) the location of the structures and any impact on the community, the environment and the residents.

. . .

183. This Board finds Mr. Pennoni to be credible and convincing and accepts as fact his testimony that the ... *billboards proposed,* given their size and height, when viewed in conjunction with their proposed locations, are inappropriate and would not be conducive to promoting the public health, safety and welfare.

(Record references omitted; emphasis added.)

We agree with BIG that each of the ZHB's material factual findings relating to Haverford's burden to justify the municipality-wide exclusion of billboards, and the evidence on which the ZHB relied, are directed to BIG's proposed billboards, as configured and located at specific locations along West Chester Pike and Lancaster Avenue. Under our precedent, while this evidence may be relevant in determining the appropriate relief for BIG as a successful challenger of the ZO, that question

was not before the ZHB under Section 916.1 of the MPC.[9] Neither the findings of the ZHB nor the record provide a sufficient basis to justify Haverford's municipality-wide exclusion of billboards. Accordingly, this Court holds that Section 182–701.B of the ZO is unconstitutional for totally excluding billboards from the entire municipality and that Haverford did not prove a substantial relationship between the exclusion and the public health, safety, morality, or general welfare.

We reach this conclusion notwithstanding ZHB Finding of Fact 168: "Mr. Comitta testified clearly and unequivocally that there is no location in Haverford Township where a billboard would be appropriate." Looking at the record referenced the ZHB cited in support of this finding, we find the following on-the-record exchange between Haverford's counsel and Mr. Comitta:

Q. Now, I want to ask you another, keeping in mind what you know about Haverford Township, what you know about the Haverford Township Comprehensive Plan, what you know about the characteristics and features of Haverford Township, and what you [have] seen in your experience both as a planner and just as an individual. And I want to ask you, do you have an opinion, to a reasonable degree of planning certainty, as to whether a proposed billboard, *and using billboard as we have [been] using it in this case, which would be a 672 square foot billboard,* would have an effect on the preservation of the

---

9. In *Application of Friday*, a municipality attempted to fend off a substantive validity challenge to its ZO, based on a total exclusion of apartment buildings, making the same argument—*i.e.*, that the site proposed by the challenger cannot support apartments. This Court, sitting *en banc*, held:

The Borough misapprehends its burden of proof. The suitability of [challenger's] site

is not relevant to an inquiry into the constitutional validity of a municipality-wide prohibition of apartment uses. Site suitability is an appropriate consideration going to the type of relief, if any, that should be given to a landowner after he has successfully challenged an ordinance.

*Application of Friday*, 381 A.2d at 507 (citation omitted).

scenic, historic and aesthetic values of the environment in Haverford Township as a whole?

A. Yes.

Q. What is that opinion?

A. That it would have an adverse effect.

Q. And for what reason?

A. For the 11 reasons that I specifically enumerated regarding billboard Location number 1.

(ZHB Hr'g Tr., 4/29/2010, at 1184–85 (emphasis added.)) According to Mr. Comitta's testimony, "Location number 1" is the 658 West Lancaster Avenue location. As recounted above, Mr. Comitta gave several reasons in his testimony why the *proposed* billboard at that site would adversely affect the historic and scenic environment. Indeed, our review of his testimony with respect to each proposed site, recounted above, reveals site-specific and sign-specific concerns. In no way does Mr. Comitta testify how *other sites* within Haverford and *other possible sign configurations* would result in the same concerns he testified to with respect to BIG's proposed billboards at 658 West Lancaster Avenue or the other three proposed sites. What we have, then, is an unsubstantiated conclusory opinion, similar in kind, if not identical, to the opinion testimony of Mr. Comitta that we rejected in our unpublished *en banc* decision in *Appeal of The Bartkowski Investment Group, Inc.*, 2012 WL 8678137 (Pa.Cmwlth., No. 578 C.D. 2012, filed November 29, 2012) (en banc) (*Springfield Twp.*):

> Clearly, this single unsubstantiated conclusion is not sufficient to justify a prohibition of all billboards throughout the entire Township.... Without testimony regarding billboards of other dimensions, and specific evidence regarding how a prohibition of billboards is justified in each zoning district within the

Township, the Township cannot meet its burden.

*Springfield Twp.*, slip op. at 7–8. We similarly reject the ZHB's finding of fact 168 and Mr. Comitta's testimony here as a basis to salvage Haverford's exclusionary ZO.

**B. Judicial Relief Question**

Having concluded that Section 182–701.B of the ZO unconstitutionally excludes billboards from Haverford, we must address BIG's request for judicial relief under Section 1006–A(c) of the MPC. BIG contends that the power to grant judicial relief under Section 1006–A(c) of the MPC is vested in the trial court and not the ZHB. The trial court below erred when it adopted and affirmed the ZHB's rejection of BIG's proposed billboards as appropriate site-specific relief. Instead, BIG contends, the trial court should have conducted a *de novo* review and determined for itself the appropriate relief under Section 1006–A(c). BIG also contends that even if there is record support for the ZHB's and trial court's rejection of BIG's proposed billboards, the trial court should have considered other possible configurations for billboards on the proposed sites.

In response, Haverford argues only that BIG was not a successful challenger to the ZO and thus is not entitled to judicial relief under Section 1006–A(c). Residents argue that Section 1006–A(c) does not entitle BIG to site-specific relief, noting the use of the word "may" throughout the provision. They further contend that site-specific relief was not appropriate in this case, as there is ample record evidence of zoning, aesthetic, and public safety concerns with regard to BIG's proposed billboards. They also disagree with BIG's claim that only the trial court may determine the question of site-specific relief under the MPC. Lower Merion, like the

Residents, argues that the record fully supports denial of BIG's proposed billboards as site-specific relief. Citing this Court's 1985 *en banc* decision in *Sultanik v. Board of Supervisors of Worcester Township,* 88 Pa.Cmwlth. 214, 488 A.2d 1197 (1985) (en banc), Lower Merion agrees with BIG that whether site-specific relief is appropriate is a question for the trial court under Section 1006–A(c) of the MPC. Lower Merion argues, however, that in this case the trial court appropriately reviewed the record created before the ZHB and determined that BIG was not entitled to site-specific relief.

As quoted above, Section 1006–A(c) of the MPC provides:

> If the court finds that an ordinance or map, or a decision or order thereunder, which has been brought up for review unlawfully prevents or restricts a development or use which has been described by the landowner through plans and other materials submitted to the governing body, agency or officer of the municipality whose action ... is in question on the appeal, *it may order the described development or use approved as to all elements or it may order it approved as to some elements and refer other elements* to the governing body, agency or officer having jurisdiction for further proceedings, including the adoption of alternative restrictions, in accordance with the court's opinion and order.

(Emphasis added.) Section 1006–A provides additional guidance and authority to the trial court on how to fashion appropriate relief:

> (d) Upon motion by any of the parties or upon motion by the court, the judge of the court *may* hold a hearing or hearings to receive additional evidence or employ experts to aid the court to frame an appropriate order. If the court employs an expert, the report or

evidence of such expert shall be available to any party and he shall be subject to examination or cross-examination by any party. He shall be paid reasonable compensation for his services which may be assessed against any or all of the parties as determined by the court. The court shall retain jurisdiction of the appeal during the pendency of any such further proceedings and may, upon motion of the landowner, issue such supplementary orders as it deems necessary to protect the rights of the landowner as declared in its opinion and order.

> (e) The fact that the plans and other materials are not in a form or are not accompanied by other submissions which are required for final approval of the development or use in question or for the issuance of permits shall not prevent the court from granting the definitive relief authorized. The court may act upon preliminary or sketch plans by framing its decree to take into account the need for further submissions before final approval is granted.

Section 1006–A(d), (e) of the MPC (emphasis added). These provisions appear to us to provide broad discretionary and oversight powers to a trial court to fashion a remedy in this very instance—*i.e.,* where a proposed use has been unlawfully denied. Numerous decisions of this Court and the Supreme Court illustrate the manner in which a trial court may exercise these powers.

In *Adams Outdoor,* the challenger sought to erect a billboard on a leased parcel of land. The local zoning officer denied relief, and the challenger appealed, arguing in the alternative that the zoning ordinance was invalid because it did not allow for outdoor advertising or that the challenger should be granted a variance to erect its billboard. The zoning hearing board afforded no relief, and the challeng-

er appealed to the trial court. The trial court affirmed, concluding that the zoning ordinance neither *de jure* nor *de facto* excluded advertising signs. On appeal, we concluded that the trial court erred in its analysis of the zoning ordinance. We held that the zoning ordinance was *de jure* exclusionary as to advertising signs. *Adams Outdoor*, 633 A.2d at 244. Moreover, we held that the municipality failed to present any evidence to justify the *de jure* exclusion. *Id.* at 245.

Concluding that the challenger was successful, the Court in *Adams Outdoor* turned its attention to what relief was due the challenger. We identified the Pennsylvania Supreme Court's decision in *Casey v. Zoning Hearing Board of Warwick Township*, 459 Pa. 219, 328 A.2d 464 (1974),[10] as the "landmark decision concerning the remedy for an invalid zoning ordinance." *Adams Outdoor*, 633 A.2d at 245. We observed:

> *Casey* requires that a successful challenger to a zoning ordinance be granted the relief requested unless the government unit proves that the proposed use will be injurious to the public health, safety, and welfare. *Casey* considered:
>
> > [W]hether a court has the power to grant an applicant-challenger definitive relief upon rendering a zoning ordinance constitutionally infirm. . . . 'Obviously, if judicial relief of local zoning action is to result in anything more than a farce, the courts must be prepared to go beyond mere invalidation and grant definitive relief.' To forsake a challenger's reasonable development plan after all the time, ef-

fort and capital invested in such a challenge is grossly inequitable. . . .

*Id.* at 245 (alterations in original) (quoting *Casey*, 328 A.2d at 469). We cautioned, however, that "approval of a challenger's plan is not automatic but must be predicated on the suitability of the proposed site and various health and safety considerations." *Id.* In *Adams Outdoor*, the municipality failed to provide any record evidence that the challenger's plan, if allowed, would be injurious to the public health, safety, welfare, and morals. Applying *Casey*, we, therefore, reversed the trial court and remanded the matter to the zoning hearing board to issue the challenger a permit to construct the sign as proposed. *Id.* at 245–46.

In *Appeal of Shore*, 524 Pa. 436, 573 A.2d 1011 (1990), the Pennsylvania Supreme Court affirmed this Court's determination that the zoning ordinance in question was unconstitutional because it effectively prohibited mobile home parks. We remanded the matter to the trial court to consider the appropriate judicial relief under 1011(2) of the MPC. During the pendency of the litigation, however, the General Assembly repealed this section of the MPC and replaced it with current Section 1006–A of the MPC. The Supreme Court held that we erred in remanding the matter to the trial court to follow a statute that had since been repealed and replaced. *See Appeal of Shore*, 573 A.2d at 1013. Instead, the Supreme Court ordered the matter remanded to the trial court "for entry of an order and proceedings consistent with Section 1006–A of the" MPC. *Id.*

---

**10.** It is worth noting that the litigation in *Casey* arose before the General Assembly, in 1972, enacted the judicial relief provision in Section 1011(2) of the MPC, 53 P.S. § 11011(2) (repealed 1988), which was repealed in 1988 and replaced by current Section 1006–A of the MPC. Nonetheless, this

Court in *Adams Outdoor* cited *Casey* as controlling precedent when evaluating the trial court's authority to grant judicial relief to a successful challenger of a zoning ordinance. Based on our decision in *Adams Outdoor*, *Casey* still has value to the extent it is consistent with Section 1006–A of the MPC.

at 1014. In so doing, however, the Supreme Court described the trial court's role:

> Unlike Section 1011(2), new Section 1006–A ... does not enumerate specific factors that a court must consider in granting relief. Rather, as it did in 1972, the [MPC] now grants courts broad discretion to approve the proposed use "as to all elements," or to approve it "as to some elements, refer[ring] other elements to the [appropriate authority] for further proceedings, including adoption of alternative restrictions, in accordance with the court's opinion and order."

*Id.* at 1013 (quoting Section 1006–A of the MPC).

In *Appeal of Miller and Son Paving, Inc.*, 161 Pa.Cmwlth. 138, 636 A.2d 274 (1993) (en banc), the challenger appealed the trial court's decision, which affirmed a decision by the local board of supervisors rejecting the challenger's substantive validity challenge to the township's zoning ordinance. The trial court held that the ordinance excluded quarrying as a use, but affirmed the board of supervisors' conclusion that the challenger's proposed quarrying site was not suitable and, thus, did not grant the challenger site specific relief. The challenger appealed to this Court, arguing that because the trial court concluded that the zoning ordinance was exclusionary, the challenger was entitled to some form of relief under Section 1006–A of the MPC. Referring to the 1988 amendment to the MPC, we noted that the site-specific factors that a trial court could consider when granting relief under repealed Section 1011(2) of the MPC have "been reassigned" to the zoning hearing board "once *that body determine[s]* that a challenge had merit." *Appeal of Miller,* 636 A.2d at 277 (emphasis added). Under

the current MPC, we described the trial court's role as follows:

> Presently a common pleas court, pursuant to Section 1006–A(c) of the [MPC] ... is required to "order the described development or use approved as to all elements or it may order it approved as to some elements and refer other elements to the governing body, agency or officer having jurisdiction thereof for further proceedings, including the adoption of alternative restrictions, in accordance with the court's opinion and order." As the Supreme Court stated in *H.R. Miller Company,* when there is a *de jure* exclusion, "[t]he sole remedy is to allow the use somewhere,* and under *Casey* and Section 1006–A(c) of the [MPC] ...., the successful litigant must receive that benefit in the form of at least partial approval of the proposal."

*Id.* (citation omitted) (emphasis added) (quoting *H.R. Miller Co. v. Bd. of Supervisors of Lancaster Twp.,* 529 Pa. 478, 605 A.2d 321, 325 n. 5 (1992)). It was the trial court's exclusive focus on the challenger's proposed quarry that led this Court to reverse and remand:

> [Common Pleas] is reversed insofar as it ruled that Miller is not entitled to site specific relief. This matter is remanded to Common Pleas for a determination, pursuant to Section 1006–A(c) of the [MPC], regarding whether Miller's use of the property as a quarry is "approved as to all elements" or "approved as to some elements [requiring] other elements [to be referred] to the governing body ... for further proceedings...."

*Id.* at 279 (citation omitted).

Finally, we note the Supreme Court's recent decision in *The Piper Group, Inc. v. Bedminster Township Board of Supervisors,* 612 Pa. 282, 30 A.3d 1083 (2011), wherein the Supreme Court suggested, but did not expressly hold, that the failure of a

challenger to request expressly judicial relief under Section 1006–A of the MPC could lead to waiver. *Piper Group*, 30 A.3d at 1098. More relevant to this action, however, is the Court's take on Section 1006–A(c) in response to the challenger's claim that it was "entitled" to site-specific relief under this section:

> [T]his subsection emphasizes the degree of flexibility and discretion that a court has in fashioning appropriate relief when it determines that a zoning challenge is valid. Under the plain language of this subsection, the court has the option to order that the challenger's use be approved in its entirety; however, this is not mandatory. Instead, the court may approve only certain portions of the challenger's plans, while subjecting the remainder to additional restrictions.... To the extent that Piper argues that it is automatically entitled to full approval of its plans under § 1006–A, this argument is plainly erroneous and must be rejected.

*Id. Piper Group* is consistent with a line of earlier cases from this Court, supporting the notion that success on an exclusionary ordinance challenge "does not automatically permit" the successful challenger "to erect whatever kind of structure it wishes without investigation into the reasonableness of the proposed plans." *J.B. Steven, Inc. v. Bd. of Comm'rs of Wilkins Twp.*, 654 A.2d 135, 139 (Pa.Cmwlth.), *appeal denied*, 542 Pa. 678, 668 A.2d 1139 (1995); *see Lamar Advertising of Penn, LLC v. Zoning Hearing Bd. of the Borough of Deer Lake*, 915 A.2d 705, 710 (Pa. Cmwlth.), *appeal denied*, 592 Pa. 792, 927 A.2d 626 (2007).

■ From the clear and unambiguous language in Section 1006–A of the MPC and the foregoing precedent, we can distill several binding principles that we will apply in this matter. First, Section 1006–A gives broad discretionary powers to the trial court to fashion appropriate relief to the successful challenger of a zoning ordinance. In exercising this power to fashion judicial relief, the trial court owes no deference to the administrative findings of the zoning hearing board or governing body, whichever rejected the challenger's substantive validity challenge. This does not mean, however, that a trial court must also ignore findings of the local agency or the evidence gathered in the local agency proceeding. Though not binding, both may inform a trial court's decision under Section 1006–A. The trial court may also conduct a hearing to receive evidence. Such additional evidence, whether developed before the trial court or the zoning hearing board at the trial court's direction, would seem necessary should the trial court consider alternative sites and/or alternative configurations for the use at issue. A trial court may retain experts. A trial court may refer some matters to the appropriate governing body in the municipality for further proceedings. But, critically, a trial court retains jurisdiction and oversees the process. Ultimately, what form of judicial relief is appropriate—*e.g.*, location and/or configuration—is the trial court's decision, subject to a right of appeal, of course, to this Court.

Having recognized the extent of a trial court's authority under Section 1006–A of the MPC, we must also acknowledge that while a trial court may conduct its review using all of the evaluative tools available, we cannot say that a trial court's failure to utilize one or all of the options will constitute an abuse of discretion under Section 1006–A of the MPC. As we have attempted to emphasize, a trial court's powers under this provision are broad *and* discretionary. It seems apparent that, in order for the trial court properly to exercise the powers the General Assembly has vested in it, a trial court must keep in mind that the

paramount concern the General Assembly expressed in Section 1006–A of the MPC, as interpreted by the courts, is to seek to provide a successful challenger with some measure of relief. That paramount concern, however, may be limited by the coexistence of legitimate health, safety, and welfare concerns, and in certain cases a review of reasonable standards set forth in pertinent zoning and land use provisions that may be applicable to a particular use at a particular location. Thus, the discretionary powers vested in trial courts serve these two considerations.

■ We now turn to BIG's contentions with respect to its request for judicial relief and the responses in opposition. BIG's first contention is that the trial court erred in applying what was essentially an appellate, or deferential standard of review, when it rejected BIG's proposed billboards as appropriate site-specific relief. As explained above, we agree with BIG that, where a zoning hearing board rejects a substantive validity challenge under the MPC and the challenger prevails in its land use appeal from that adverse decision, the trial court, and not the zoning hearing board, must consider the appropriateness of site-specific relief. In essence, there is a bifurcated process. The trial court reviews the zoning hearing board's decision on the substantive validity challenge under the deferential, appellate standard of review if it takes no additional evidence. If, however, the trial court concludes that the zoning hearing board erred and that the ordinance is unconstitutionally exclusionary, the trial court must proceed under Section 1006–A of the MPC.

Because the ZHB rejected BIG's substantive validity challenge, under *Appeal of Miller,* 636 A.2d at 277, it was not required to proceed to review the site suitability criteria set forth in Section 916.1(c)(5) of the MPC. It did so here,

nonetheless, and concluded, based on Haverford's evidence, that BIG's proposed billboards were not suitable for public health, safety, and welfare reasons. In reviewing the trial court's Decision, which as noted above included findings of fact and conclusions of law, the trial court claims to have affirmed the ZHB's decision to the extent "that the billboards proposed by [BIG] were not suitable for the proposed sites." (Trial Ct. Decision at 24.) The trial court's use of the word "affirm" would suggest that the trial court applied a deferential standard of review to this component of ZHB's determination. But in reviewing the entirety of the trial court's Decision, as well as its Rule 1925(a) Opinion, we cannot reach such a definitive conclusion. Moreover, were we to remand to the trial court the question of whether BIG is entitled to judicial relief in the form of approval of its proposed billboards with instructions that the trial court review the question under Section 1006–A(c) of the MPC and without deference to the ZHB's fact finding, we are not convinced that the result would be any different.

■ Instead, on the question of whether the trial court erred in denying BIG site-specific relief in the form of approval of BIG's proposed billboards at the proposed sites, we will follow the Court's unpublished *en banc* decision in *Springfield Township.* In *Springfield Township,* we held the township's ordinance was exclusionary and lacked health, safety, and welfare justifications. *Springfield Twp.,* slip op. at 8. We nonetheless refused to grant BIG site-specific relief in that case with respect to the "proposed billboards" at the "proposed sites," citing ample evidence in the record to show that allowing the proposed billboards at the proposed sites would be detrimental to the health and safety of the residents and passersby. *Id.* at 8. Our holding in that case was

clearly limited to the question of whether BIG could get judicial relief that would allow BIG to build what it wanted where it wanted. Like the record in *Springfield Township*, the record before the ZHB, which the trial court could appropriately consider when fashioning judicial relief, is more than adequate to reject judicial relief under Section 1006–A(c) in the form of approval of *all* elements of BIG's proposed billboards. Accordingly, and notwithstanding the trial court's use of language in its Decision that would suggest a deferential standard of review, we will affirm the trial court's Decision to the extent it denied judicial relief to BIG approving all elements of BIG's proposed billboards.

We now deal with an issue that we did not address in *Springfield Township*. That issue is whether and to what extent a landowner that has prevailed on its substantive validity challenge to an exclusionary ordinance may receive some *other* form of site-specific relief under the MPC. As we note above, Section 1006–A(c) of the MPC, as interpreted and applied by the courts, compels the trial court, once the landowner has established an unjustified exclusion of a valid use, to consider whether the landowner's proposed use should be approved "as to all" of its elements or "as to some." Under *Springfield Township*, the trial court here did not err in refusing to grant relief under Section 1006–A "as to all." But the trial court failed to consider whether it should approve "as to some," utilizing the various tools available to it, including, but not limited to, referral of certain matters to the ZHB for consideration and further proceedings.

The trial court acknowledged that the ZO is exclusionary. But rather than proceed as directed under Section 1006–A(c) and the pertinent case law, which, as explained above, affords a trial court the power to grant relief of such nature *that is*

*less than, or an alternative to,* the original approval the applicant requested, the trial court here went no further than considering and rejecting BIG's proposed billboards. In doing so, the trial court erred in failing to consider fully BIG's request for judicial relief under Section 1006–A(c) of the MPC.

### III. CONCLUSION

For the reasons set forth above, we find that the Section 182–701.B of the ZO is unconstitutional for excluding billboards from the entire municipality and that Haverford did not prove a substantial relationship between the municipality-wide exclusion and the public health, safety, morality, or general welfare. The trial court did not err in refusing to grant BIG judicial relief under Section 1006–A of the MPC in the form of approval of BIG's proposed billboards at BIG's proposed sites within Haverford. The trial court, however, should have proceeded under Section 1006–A of the MPC to consider whether alternative relief can and should be made available to BIG with respect to the proposed sites. We, therefore, affirm the trial court in part, reverse in part, and remand this matter to the trial court for a determination, pursuant to Section 1006–A(c) of the MPC, regarding whether BIG's proposed use of the four properties on West Chester Pike and Lancaster Avenue may be "approved as to some elements" and whether "other elements" may be referred "to the governing body, agency or officer having jurisdiction thereof for further proceedings, including the adoption of alternative restrictions."

### *ORDER*

AND NOW, this 8th day of December, 2014, the order of the Court of Common Pleas of Delaware County (trial court) is AFFIRMED in part and REVERSED in

part. This matter is REMANDED to the trial court for further proceedings consistent with Section 1006–A of the Municipalities Planning Code, Act of July 31, 1968, added by the Act of December 21, 1988, P.L. 1329, *as amended,* 53 P.S. § 11006–A, and the accompanying opinion.

Jurisdiction relinquished. ·