**CATHOLIC SOCIAL SERVICES HOUSING CORPORATION,**
**Appellant**

v.

**ZONING HEARING BOARD OF EDWARDSVILLE BOROUGH.**

Commonwealth Court of Pennsylvania.

Argued March 8, 2011.

Decided March 31, 2011.

Andrew J. Hailstone, Scranton, for appellant.

Joseph L. Vullo, Forty Fort, for appellee.

BEFORE: PELLEGRINI, Judge, and BROBSON, Judge, and KELLEY, Senior Judge.

OPINION BY Judge PELLEGRINI.

Catholic Social Services Housing Corporation (CSS) appeals from an order of the Court of Common Pleas of Luzerne County (trial court) affirming the decision of the Zoning Hearing Board of Edwardsville Borough (Board) denying its application for a use variance. Because we find no error in the Board's decision, we affirm.

The facts of this case are not in dispute. The Diocese of Scranton (Diocese) owns property located at 207 Zerby Avenue in Edwardsville, Luzerne County. While the property is a single Lot, it is a "split lot" in that a portion of the property is located within the R–1 district of Edwardsville Borough and a portion is located in the R–

3 district of Kingston Borough. St. Hedwig's Roman Catholic Church, school, rectory, and convent buildings are currently situated on the property, but have not been operational for some time. On behalf of the Diocese, CSS proposed to demolish the church, add onto the school, and develop a 30–unit apartment building to house recent military veterans of the wars in Iraq and Afghanistan. Under this proposal, approximately 12 of the apartment units would be situated in the R–1 district of Edwardsville Borough. While multi-family dwellings are permitted in Kingston Borough, they are not permitted in an R–1 district in Edwardsville Borough either by permitted use or by special exception, thereby requiring CSS to apply to the Board for a use variance.

At a public hearing before the Board, CSS presented the testimony of only one witness, Stephen R. Nocilla (Mr. Nocilla), its executive director and housing director. Mr. Nocilla contacted an architectural firm, the Palumbo Group, to inspect the property and determine its potential use and how it could be converted. (R.R. at 13). According to Mr. Nocilla, CSS considered using the Church as a warehouse to store food and furniture or as community space, but these uses were not feasible. (R.R. at 14–15). It also considered converting the Church building to townhouses, but this was too cost prohibitive. (R.R. at 15). Mr. Nocilla testified that CSS investigated the possibility of demolishing the building and selling the property, but this would also be too cost prohibitive. (R.R. at 16). He stated that because the Lot straddled two different boroughs with different zoning ordinances, this presented a significant use problem. (R.R. at 16–17).

Given these obstacles, CSS decided to pursue the option of providing housing for veterans, which has been a focus of CSS for many years and a growing need within the community. (R.R. at 13). Mr. Nocilla stated that CSS' proposal was for a 30–unit apartment building to house honorably discharged veterans and their families with 7 units specifically designated for severely disabled veterans. (R.R. at 19). According to Mr. Nocilla, the residents would be referred to CSS by the Veterans Administration (VA) hospital. (R.R. at 19). Mr. Nocilla claimed the building would be strictly residential with no on-site services provided and residents would have to be independent. (R.R. at 21). CSS has a zero tolerance policy regarding drugs and alcohol and all residents would be required to submit to random drug screening as well as testing on an as-needed basis. (R.R. at 20). Mr. Nocilla also testified that the proposed plan incorporated a 50–foot setback from the front of the property with a green area in front and green space between the building and its neighbors and the proposed parking lot behind the building, out of site. (R.R. at 18). On cross-examination, Mr. Nocilla admitted that CSS considered placing the entire apartment building in Kingston Borough where multi-family dwellings are permitted, but did not do so for aesthetic reasons. (R.R. at 23).

The Board unanimously denied CSS' application for a use variance because it failed to meet the requirements of Section 27–801(5)(D)[1] of the Borough's

---

1. Section 27–801(5)(D) of the Ordinance provides as follows:

> D. Variances. The Board shall hear requests for variances where it is alleged that the provisions of this Chapter inflict unnecessary hardship upon the applicant. Sub-

ject to the provisions of § 27–802(1) of this Chapter, the Board may, by rule, prescribe the form of application and may require preliminary application to the Zoning Officer. The Board may grant a variance, pro-

Zoning Ordinance (Ordinance). CSS appealed to the trial court, which affirmed, noting that the test for a use variance is not whether the owner's proposed use of the property is more desirable or even the best use, but whether the property may be used in a reasonable manner within the restrictive provisions of the ordinance. He stated that CSS did not meet that burden because Mr. Nocilla testified that it was possible to design the project so that all 30 apartment units fit within the portion of the property located in Kingston Borough, which permits multi-family dwellings, but that CSS did not utilize this design due to "aesthetic preferences." Given these facts, the trial court found the Board's denial of CSS' application for a use variance was supported by substantial evidence. CSS filed the instant appeal arguing that it was entitled to a use variance because it established that churches have very little value as far as reuse or repurposing, and the options demolishing the church and then selling the lot was cost prohibitive.[2]

The party seeking a variance bears a heavy burden because the reasons for granting a variance must be substantial, serious and compelling. *Valley View Civic Association v. Zoning Bd. of Adjustment*, 501 Pa. 550, 555, 462 A.2d 637, 640 (1983). An applicant seeking a variance must demonstrate that unnecessary hardship will result if a variance is denied, and the proposed use will not be contrary to the public interest. *Id.; Taliaferro v. Darby Twp. Zoning Hearing Bd.*, 873 A.2d 807, 812 (Pa.Cmwlth.2005). To establish unnecessary hardship an applicant must prove the following:

> (1) the physical features of the property are such that it cannot be used for a permitted purpose; or (2) the property can be conformed for a permitted use only at a prohibitive expense; or (3) the property is valueless for any purpose permitted by the zoning ordinance. The applicant must show the hardship is

vided the following findings are made where relevant in a given case:

(1) There are unique physical circumstances or conditions, including irregularity, narrowness, or shallowness of lot size of [sic] shape, or exceptional topographical or other physical conditions peculiar to the particular property, and that the unnecessary hardship is due to such conditions generally created by the provisions of this Chapter in the neighborhood or district in which the property is located.

(2) Because of such physical circumstances or conditions, there is no reasonable possibility that the property can be developed in strict conformity with provisions of this Chapter and that the authorization of a variance is therefore necessary to enable the reasonable use of the property.

(3) Such unnecessary hardship has not been created by the appellant.

(4) The variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, not substantially or permanently impair the appropriate use or development

of adjacent property, nor be detrimental to the public welfare.

(5) The variance, if authorized, will represent the minimum variance that will afford relief and will represent the least modification possible of the regulation in issue.

(6) In granting any variance, the Board may attach such reasonable conditions and safeguards as it may deem necessary to implement the purposes of this Chapter.

2. In a zoning appeal where, as in the present case, the trial court has taken no additional evidence, this Court's scope of review is limited to determining whether the Board committed an error of law or abuse of discretion. *Glenside Center, Inc. v. Abington Twp. Zoning Hearing Bd.*, 973 A.2d 10, 15 n. 11 (Pa. Cmwlth.2009) (citations omitted). An abuse of discretion occurs when the findings of the Board are not supported by substantial evidence. *Id.* Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Valley View Civic Association v. Zoning Bd. of Adjustment*, 501 Pa. 550, 555, 462 A.2d 637, 640 (1983).

unique or peculiar to the property as distinguished from a hardship arising from the impact of zoning regulations on the entire district. Mere evidence that the zoned use is less financially rewarding than the proposed use is insufficient to justify a variance.

*Taliaferro,* 873 A.2d at 812 (internal citations omitted).

█ CSS clearly did not meet its burden of showing that the lot would have been rendered useless by compliance with the Edwardsville Ordinance. The evidence indicated that it was possible to design the proposed project so that the entire building was located within Kingston Borough, which allows multi-family dwellings, but CSS chose not to do so for aesthetic reasons, which is not the unnecessary hardship necessary for granting a use variance. In addition, under the present proposal, 18 of the apartments are located within Kingston Borough, which allows such a use. *See Id.; Washington Twp. v. Washington Twp. Zoning Hearing Bd.,* 27 Pa.Cmwlth. 510, 365 A.2d 691 (1976) (the test for a variance is not whether the proposed use is more desirable to the owner than the permitted use, but rather whether the property can be used in a reasonable manner within the restrictions of the ordinance); *A.R.E. Lehigh Valley Partners v. Zoning Hearing Bd. of Upper Macungie Twp.,* 139 Pa.Cmwlth. 361, 590 A.2d 842 (1991) (a variance should not be granted simply because such a grant would permit the owner to obtain a greater profit from use of the property).

Merely because the property falls within two different boroughs and is subject to different zoning ordinances does not lessen the standard that the property as whole must be rendered near valueless before a use variance can be granted. In *813 Associates v. Zoning Hearing Board of Springfield Township,* 84 Pa.Cmwlth. 420, 479 A.2d 677 (1984), a zoning district boundary line, as here, bisected the lot so that part of the property was zoned commercial and part was zoned residential. *Id.* at 678. The property owner operated a medical office building on the commercial portion of the lot and was granted a special exception extending its commercial use 50 feet into the residential zone. *Id.* Several years later, the property owner wished to construct an addition to its office building and requested a variance to extend its commercial use an additional 50 feet into the residential zone in order to construct several parking spaces. *Id.* The Zoning Hearing Board denied the request and we affirmed that decision, stating:

> The [property owner] has not established that the lot as a *whole* is unusable for that for which it was zoned. At most, the appellant has shown that the portion of the lot zoned [ ] residential is harmed by the zoning ordinance.

*Id.* (Emphasis in original).

While the present case involves zoning ordinances from two different boroughs rather than just one, the effect is the same as that in *813 Associates*—the single lot is bisected into two different zoning districts. Just as in *813 Associates,* CSS has failed to establish that the lot as a *whole* is unusable for the purposes for which it was zoned. In fact, CSS' own witness testified that Kingston's zoning ordinance allows multi-family dwellings and that all or at least 18 units could lawfully be situated in Kingston Borough. Because CSS failed to prove that the lot as a whole is unusable under the ordinances, it failed to establish an unnecessary hardship.

Given all of these factors, the Board properly denied CSS' application for a use variance and, accordingly, the decision of the trial court is affirmed.

*ORDER*

AND NOW, this 31st day of March, 2011, the order of the Court of Common Pleas of Luzerne County, dated June 28, 2010, at No. 2009–CV–10714, is affirmed.