IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Domenic F. Leone and     :
Catherine V. Leone      :
             :
    v.       : No. 2065 C.D. 2014
             : Argued:  November 16, 2015
Borough of Rochester,     :
      Appellant   :


BEFORE:  HONORABLE DAN PELLEGRINI, President Judge
      HONORABLE MARY HANNAH LEAVITT, Judge
      HONORABLE PATRICIA A. McCULLOUGH, Judge


<u>OPINION NOT REPORTED</u>


MEMORANDUM OPINION BY
PRESIDENT JUDGE PELLEGRINI     FILED: December 10, 2015


    The Borough of Rochester (Borough) appeals from an order of the Court of Common Pleas of Beaver County (trial court) finding the Borough Zoning Ordinance (Zoning Ordinance) was *de jure* exclusionary by excluding all group living facilities unless they had 24-hour onsite supervision.  As a result, the trial court found that Domenic F. Leone and Catherine V. Leone (Landowners) were allowed to rent certain property that they owned for a licensed partial Community Residential Rehabilitation Service (CRRS).[1]  The trial court also directed that the

---

[1] The Pennsylvania Code defines "CRRS" as:

> Transitional residential programs in community settings for persons with chronic psychiatric disability.  CRRS's provide housing, personal assistance and psychosocial rehabilitation to

**(Footnote continued on next page…)**

Borough adopt a curative amendment to the Zoning Ordinance to permit the operation of a licensed partial CRRS as a permitted use in the C-1 Community Business District (C-1 Zoning District).

Landowners own 101 Brighton Avenue, Rochester, Pennsylvania, 15074 (property) zoned as a C-1 Zoning District per the Zoning Ordinance and Borough zoning map. Landowners have owned the property for 21 years, during which Mr. Leone has operated his primary business, Henderson Printing, out of the first two floors and leased residential apartments on the other two floors.

In the spring of 2013, Zachewicz Enterprises, Inc., doing business as Cornerstone Recovery and Supports (Cornerstone), approached Mr. Leone about opening a licensed partial CRRS on the third floor of the property. Mr. Leone then went to the Borough's office and spoke with unnamed individuals of his intention to lease a portion of his property to Cornerstone to operate a partial CRRS. He was told to notify Berkheimer Tax Service so that taxes could be collected. Without filing any permits, Landowners then commenced renovations and improvements to

---

**(continued…)**

clients in nonmedical settings. There are two levels of care, full or partial, which are distinguished by the level of functioning of the clients served and the intensity of rehabilitation and training services provided by CRRS staff to the clients. In both levels of care, the provider acts as landlord to the client. Except host homes for children, every site used by a CRRS to house clients is owned, held, leased or controlled by the provider or a provider-affiliate.

55 Pa. Code §5310.6.

2

the third floor of the property. In July 2013, Landowners received a cease and desist letter from Tom Albanese, the Borough Zoning Officer, stating that the Zoning Ordinance prohibited the use of properties located in a C-1 Zoning District as a "personal care boarding home." All "group" living uses under the Zoning Ordinance required 24-hour onsite supervision.

Because all group living uses required 24-hour onsite supervision, Landowners alleged that the Zoning Ordinance was unconstitutionally exclusionary.[2] On that basis, pursuant to Section 609.1 of the Pennsylvania Municipalities Planning Code (MPC),[3] Landowners filed a Curative Amendment Application (application) with the Borough seeking to "cure" the unconstitutionality of the Zoning Ordinance by presenting a curative amendment to the Zoning Ordinance to add a licensed partial CRRS as a permitted or conditional use in the C-1 Zoning District.

At a public hearing before Borough Council, Mr. Leone testified that he had entered into a lease with Cornerstone under which Cornerstone's residents occupied apartments on the third floor of the property. Mr. Leone testified that he was unsure of how much supervision the residents received during the day but that he had not had any incidents with regard to the residents. Mr. Leone also testified

---

[2] A zoning ordinance is invalid as *de jure* exclusionary when it totally excludes a legitimate use. *H.R. Miller Co., Inc. v. Board of Supervisors of Lancaster Township*, 605 A.2d 321 (Pa. 1992).

[3] Act of July 31, 1968, P.L. 805, added by Act of June 1, 1972, *as amended*, 53 P.S. §10609.1.

that the property has been a mixed use ever since he has owned it and that he has "had apartments, and … mental health patients renting off of [him] in one of the apartments." (Transcript of Hearing, 3/26/14, at 28.) However, Mr. Leone testified that Cornerstone was not yet licensed to operate out of the property.

Mark Zachewicz, Cornerstone's CEO, testified that Cornerstone is a nonprofit that contracts with Beaver County to provide two services: one is residential rehabilitation services and the other is case management supports for individuals with behavioral health issues. Mr. Zachewicz testified that he was particularly interested in the property due to its close proximity to public transportation and a mental health association. He also testified that Cornerstone had a lease with Mr. Leone for office space but not apartments, and that there are currently three residents living there for whom Cornerstone is providing services[4] and 20 hours of supervision per day. Furthermore, Mr. Zachewicz testified that because Cornerstone has less than four residents, it does not need a license, but it would need a license in order to be able to increase the number of residents to six so that the business is more financially feasible.[5]

---

[4] According to Mr. Zachewicz's testimony, the types of services Cornerstone provides to these residents include guidance with medication administration, food prep, making sure the residents make their doctors' appointments, etc.

[5] Additionally, Joe Cook, the Executive Director of the Mental Health Association; Dan Edwards, an individual who has lived at a CRRS before; Raymond Gutowski, a mental health professional and employee of Cornerstone; and Joanne Koehler, the Director of Programs of the Mental Health Association, all testified in support of licensing the property for use as a partial CRRS, opining that such a service would be beneficial to the community.

4

Marcelle Scott, a consultant for businesses that provide support to people with intellectual disabilities or mental health issues, testified that she was in the process of assisting Cornerstone in its application for licensing for the property. Ms. Scott testified that the individuals living on the property have their own primary care physicians, who prescribe their medications, and they have their own health insurance that covers their doctors' visits and medications. She further testified that if the individuals do not have insurance, they could still be accepted into the program as there are programs that would subsidize them to purchase the medications. She also testified that one of the requirements of a licensed facility is that the individuals attend or have a productive day program or competitive employment, which the current individuals do. Moreover, she testified that the individuals have to sign a contract with Mr. Zachewicz to be a part of the program.[6]

Mr. Albanese testified that given the information of the property's proposed use and based on the definitions set forth in the Zoning Ordinance, he determined that the closest definition of the proposed use of the property would be a "personal care boarding home," which requires 24-hour supervision. Mr.

---

[6] Ms. Scott testified that under the terms of the contract:

> [The individuals] have to be able to function in a group setting. They have to be able to be respectful of the people in their home, respectful of the staff that are there, they have to take their medications, they have to attend doctors' appointments, they have to have some sort of program outside of the program.

(Transcript of Hearing, 3/26/14, at 74-75.)

Albanese testified that partial CRRS is permitted as a conditional use in the Mixed Use (M) and R-3 Zoning Districts within the Borough.

By a unanimous vote, the Council rejected the application, finding that Landowners have failed to meet their burden of proof in demonstrating the exclusionary characteristics of the Zoning Ordinance.

Landowners appealed to the trial court which found that the *de jure* exclusion of group living facilities that had no supervision or less than 24-hour onsite supervision was unconstitutionally exclusionary. The trial court found that because the Zoning Ordinance constitutes a *de jure* exclusion of partial CRRS facilities, Landowners are entitled to specific relief and should be permitted to operate a licensed partial CRRS on their property. However, the trial court also ordered that the Zoning Ordinance be cured to allow the operation of partial CRRSs as a permitted use in the C-1 Zoning District. This appeal by the Borough followed.[7]

On appeal, the Borough argues that the Zoning Ordinance does not totally exclude the use for a licensed partial CRRS in the Borough. It argues that

---

[7] In a zoning appeal where the trial court has taken no additional evidence, our scope of review is limited to determining whether the zoning hearing board has committed an error of law or an abuse of discretion. *Catholic Social Services Housing Corporation v. Zoning Hearing Board of Edwardsville Borough*, 18 A.3d 404 (Pa. Cmwlth. 2011). An abuse of discretion occurs when the findings of the zoning hearing board are not supported by substantial evidence. *Id.* Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.*

although the use of property as a licensed partial CRRS is not a permitted or a conditional use within the C-1 Zoning District, it is permitted as a conditional use in the M and R-3 Zoning Districts.

A zoning ordinance is presumptively valid and constitutional. *Ficco v. Board of Supervisors*, 677 A.2d 897, 899 (Pa. Cmwlth. 1996). "However, an ordinance that effects a total prohibition of an otherwise legitimate business use is particularly suspect." *Atiyeh v. Board of Commissioners of the Township of Bethlehem*, 41 A.3d 232, 236 (Pa. Cmwlth. 2012). A party challenging the lawfulness of the ordinance bears the burden of proving that the ordinance completely excludes a legitimate use. *Id.* Once the challenger's burden is met, the burden shifts to the municipality to show that the exclusion is substantially related to the promotion of public health, safety and welfare. *Id.*

Moreover, simply because a zoning ordinance does not specifically mention a proposed use is not a basis for finding an unconstitutional exclusion of that use. *Id.* Rather, in such cases, the court must determine whether the proposed use is included within another specifically provided for use in the ordinance. *Id.* In making this determination, we must construe the ordinance expansively, "affording the landowner the broadest possible use and enjoyment of his or her land," and give undefined terms their plain meaning. *Id.*

A major difference between a full-care CRRS and a partial CRRS is that the full-care facility must have 24-hour onsite supervision, whereas for a partial CRRS, supervision is on a "regularly scheduled basis." 55 Pa. Code

§5310.6.[8] It is uncontroverted that the Zoning Ordinance does not allow for a partial CRRS in the C-1 Zoning District. In fact, the Zoning Ordinance does not permit the operation of any CRRSs in the C-1 Zoning District.[9] The Borough

---

[8] "Full-care CRRS for adults" is defined by the Pennsylvania Code as:

> A program that provides living accommodations for the client *with staff onsite whenever a client is there* and a full range of personal assistance and psycho-social rehabilitation for psychiatrically disabled adults who display severe community adjustment problems and who require an intensive, structured living situation.

55 Pa. Code §5310.6 (emphasis added).

"Partial-care CRRS" is defined as:

> A program that provides living accommodations for the client. *Staff is at the site on a regularly scheduled basis including evenings and weekends.* A limited range of personal assistance and psychosocial services are provided for psychiatrically disabled adults who display community adjustment problems and require a living situation which includes rehabilitation and training services.

*Id.* (emphasis added).

[9] Under Sections 305 and 306 of the Zoning Ordinance, governing R-3 Multifamily Residential and M – Mixed Use Districts, respectively, group residences and personal care boarding homes are permitted as conditional uses. However, while the Zoning Ordinance permits a "group residence" and a "personal care boarding home," a "group residence" is defined as:

> [A] facility located in a residential area which provides room, board and specialized services to eight (8) or fewer unrelated persons, such as children (under 18 years of age), handicapped or elderly (over 60 years of age) individuals. These individuals must be living together as a single housekeeping unit with one (1) or more qualified adults *providing twenty-four (24) hour supervision.* The group residence may be operated by a governmental agency, certified agent or nonprofit corporation. This category shall not

**(Footnote continued on next page…)**

argues that the Zoning Ordinance permits the use of property as a licensed partial CRRS within the M and R-3 Zoning Districts as a "group residence" or a "personal care" home. For the Zoning Ordinance not to be *de jure* exclusionary, though, group living uses that provide less than 24-hour supervision, such as partial CRRS facilities, must be allowed within another use that is specifically provided for in the Zoning Ordinance. In this case, both applicable definitions in the Zoning Ordinance expressly require that 24-hour supervision must be provided in CRRS-type facilities and, thus, excludes a partial CRRS use even within the M and R-3 Zoning Districts, much less the C-1 Zoning District.

---

**(continued…)**

> include facilities operated by or under the jurisdiction of any government bureau of corrections or similar institution.

(R. 466a) (emphasis added).

A "personal care board home" is defined as:

> [A]ny premises, operated for consideration or not, in which food, shelter and *personal assistance or supervision are provided for on a twenty-four (24) hour per day* basis for a minimum of three (3) persons and a maximum of eight (8) persons who require assistance or supervision in such matters as dressing, bathing, diet or medication prescribed for self administration [sic], but do not require hospitalization or care in a skilled nursing facility. These individuals may be children, handicapped, elderly, or otherwise in need of specialized supervision and care. This category of facility requires licensing, certification or supervision by the Pennsylvania Department of Welfare.

(R. 469a) (emphasis added).

The burden then shifts to the Borough to establish that this exclusion is substantially related to the promotion of public health, safety and welfare. The Borough offers no justification as to its exclusion of partial CRRSs. It simply asserts that, "What [Landowners] argue is that the [Borough] does not permit partial [CRRSs] for the reason that the Borough requires a 24-hour supervision in a personal care boarding home at a group residence, clearly to protect the health, safety, and welfare of all the citizens of [the Borough]." (Appellant's Brief at 21.)

Because the Zoning Ordinance does not allow for a partial CRRS, and the Borough has failed to justify the exclusion, we conclude that the Zoning Ordinance is *de jure* exclusionary. Where an ordinance has been found to be *de jure* exclusionary, Pennsylvania law entitles the successful challenger of the ordinance to specific relief. *H.R. Miller Co., Inc. v. Board of Supervisors of Lancaster Township*, 605 A.2d 321, 324-25 (Pa. 1992).

Here, Landowners have established that the Zoning Ordinance is *de jure* exclusionary with regard to a partial CRRS use. Thus, Landowners are entitled to specific relief and should be permitted to operate a licensed partial CRRS on the third floor of their property and the Zoning Ordinance must be amended to allow for partial CRRSs in the Borough's C-1 Zoning District.

Even if the Zoning Ordinance is *de jure* exclusionary as to group living uses that provide less than 24-hour supervision, the Borough then contends that the trial court could only order site specific relief and could not, as it did, direct the Borough to adopt Landowners' proposed curative amendment that would

10

allow a partial CRRS as a permitted use in the C-1 Zoning District. We agree. Once "the landowner has won the right to proceed, the curative amendment loses its viability. The courts cannot order the municipality to take a specific legislative action." *Board of Commissioners of Ross Township v. Harsch*, 467 A.2d 1183, 1187 (Pa. Cmwlth. 1983).

Accordingly, we affirm the trial court's order insofar as it found the Zoning Ordinance exclusion of the group living facilities with less than 24-hour onsite supervision was *de jure* unconstitutional, and we reverse that portion of the order directing the Borough to adopt Landowners' proposed curative amendment.

_____

DAN PELLEGRINI, President Judge

11

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Domenic F. Leone and :
Catherine V. Leone :
                      :
         v. : No. 2065 C.D. 2014
                      :
Borough of Rochester, :
            Appellant :

## **O R D E R**

AND NOW, this 10th day of December, 2015, the order of the Court of Common Pleas of Beaver County dated October 17, 2014, at No. 10724 of 2014, is affirmed insofar as it found the Borough of Rochester's Zoning Ordinance exclusion of the group living facilities with less than 24-hour onsite supervision was *de jure* unconstitutional, but reverse that portion of the order directing the Borough of Rochester to adopt Domenic F. Leone's and Catherine V. Leone's proposed curative amendment.

_____
DAN PELLEGRINI, President Judge